BOLTON *et al.* v. BARNETT *et al.*

[95 South. 721. No. 22633.]

1. WILLS. *Letter by testatrix to executor of will held codicil, and not revocation.*

   In this case the will and letter testamentary in form considered, and letter *held* not to revoke will, but merely to be a condicil thereto.

2. WILLS. *Devise to one and heirs of body creates fee-simple estate.*

   A devise to A. and the heirs of his body is, under section 2765, Code

of 1906 (section 2269, Hemingway's Code), a devise in fee simple to A.

3. WILLS. *Will of nonresident devising property within state may be probated in first instance in county where situated.*
   Where a testator living in a sister state owns real and personal property situated in Mississippi, the original will devising and bequeathing this property may be probated in the first instance in the county in this state where the property is situated. Section 2004, Code 1906 (section 1669, Hemingway's Code), expressly so provides.

4. EXECUTORS AND ADMINISTRATORS. *Administration of deceased person, irrespecitve of domicile, independent and conducted as if decedent resident of state.*
   In this state the administration of the estate of a deceased person, no matter where his domicile was, is independent of all other administrations, and is to be conducted in all respects as if the decelent had been a citizen of this state when he died.

5. WILLS. *Husband may renounce wife's will and take child's share, although domicile of testatrix in foreign state.*
   Under section 3374, Hemingway's Code (section 5086, Code of 1906), a husband has the right to renounce the will of his wife and take a child's part of the estate, both real and personal, though the domicile of the testatrix was in a foreign state, under which law the right of renunciation is not given the husband.

6. WILLS. *Right of husband to renounce will of wife and take child's part governed by law of state, and not by law of wife's domicile; husband renouncing will of wife, who also leaves children, may take child's part in both real and personal property.*
   Since all administrations in Mississippi are now original, and not ancillary, the right of the husband, upon renouncing the will of the wift, to take a child's part of both the real and personal property, is governed solely by the law of this state, and not by the law. of the domicile of the testatrix at the time of her death. Under our law, when the wife also left children, the husband, upon renouncing the will, is entitled to take a child's part of both the real and personal property. *Slaughter* v. *Garland,* 40 Miss. 172, distinguished.

7. DESCENT AND DISTRIBUTION. *Situs of debt in state where owner's conduct evinces intention to so locate or where it arises incident to business therein.*
   Where the owner of a debt so deals with it as to establish an intention to locate it here, or if the debt arises as an incident to business conducted in this state, the *situs* of this debt in this state. business conducted in this state, the *situs* of this debt is in this state.

APPEAL from chancery court of Prentiss county.

HON. A. J. McINTYRE, Chancellor.

Proceedings to probate the will of Bertha Bolton, deceased. From the decree W. J. Bolton and others appeal adversely to W. T. Barnett and others. Reversed and remanded.

*W. C. Sweat,* for appellant.

There is only one point in the brief of counsel for W. T. Barnett to which I care to reply, and that is his contention that Bolton, the husband of the deceased, had no right to renounce the will of his deceased wife for the reason that they were both residents of the state of Tennessee, and that the state of Tennessee has no statute authorizing the husband to renounce the will of the wife and therefore he could not renounce the will and take his share of the real estate located in Mississippi. Counsel is clearly in error in his position in this matter. His premises are entirely wrong and his conclusions for that reason are also wrong. It seems that he assumes that the deceased had a legal right to devise her real estate in Mississippi regardless of the statutes of Mississippi, and that her husband must first show a statutory right to renounce in Tennessee and must exercise that right before he has any standing in the courts of the state of Mississippi. Counsel is clearly in error in this position.

As has been repeatedly held by this court that the disposition of real estate in Mississippi is controlled entirely and exclusively by the law of Misssssppi, whether that disposition be by will, deed, or descent or in whatever mode or manner the property may be disposed of or transmitted. *Wells, et al.* v. *Wells,* 35 Miss. 638; *Crusoe* v. *Butler, et ux.,* 36 Miss. 160; *Still* v. *Corp. of Woodville,* 38 Miss. 646; *Riley* v. *Mosley,* 44 Miss. 37; *Woodville* v. *Pizatti,* 119 Miss. 442.

Counsel in making his brief has evidently overlooked the case of *Woodville* v. *Pizatti, supra,* in which case the will

of Pizatti was contested in the state of Mississippi. The deceased and all interested parties resided in Louisiana. The will had been probated there, and the widow, Mrs. Pizatti, had accepted one-half of the community property in Louisiana and made no contest of the will there. When the will was offered for probate in this state, where the deceased owned real estate, his widow contested the will and the court held that he had a right to contest it, regardless of the fact that it was a Louisiana will, and that it had not been contested by her in the courts of that state when presented for probate. We respectfully submit that, if the widow had a right to contest the will in the Pizatti case, she would likewise have had the right to renounce it and take her share under the law. *Woodville* v. *Pizatti,* 119 Miss. 461.

The testator, Mrs. Bolton, would have no right at all to transmit her property located in Mississippi by will except under the statutes of Mississippi. Since those claiming under the law must look to the statutes of Mississippi to establish their right thereto, they cannot deny the husband his right to renounce the will according to the statutes of this state. The husband's statutory right to renounce the will is certainly just as strong as the statutory rights of the other heirs who claim under the law. Further on in the same opinion, the court said: "The English common law, from which we derive our jurisprudence, fully recognized the right of the jurisdiction in which immovable property is situated to govern all rights in or to such property, including the devolution of same. *Woodville* v. *Pizatti,* 119 Miss. 458. Also: "The probate of a will in the state wherein the testator was domiciled at the time of his death has no effect upon land situated in another state, and for this reason statutes have been enacted in various jurisdictions providing for the probate of foreign wills, or the recording of duly authenticated copies of the probate proceedings." *Woodville* v. *Pizatti, supra,* p. 458. And again, "The common law has avoided all . . . difficulties by a simple and uniform test. It declares that

the law of the *situs* shall exclusively govern in regard to all rights, interests, and titles in and to immovable property." *Woodville* v. *Pizatti,* p. 458.

If the law of Mississippi governs as to all rights and interest to this real estate in Mississippi, as is held in the above case, the husband had a right to renounce the will. The right to renounce the will of a husband or wife, devising lands in this state, is certainly a right with reference to real estate in this state; and is one which the husband had a right to exercise.

Counsel for W. T. Barnett relies on several cases in Mississippi to sustain his position; however, I think a careful reading of these cases will disclose that none of them can be successfully relied upon by him. The first case set out by him in support of his position is that of *Garland* v. *Rowan,* 2 S. & M. p. 617. At the outset of this opinion, the court used the following language: "It may be as well to remark in the commencement that as to the real estate, there is no diversity of opinion; it is universally conceded, that such estate is governed, in its transmission and descent, by the laws of the country in which it is situated." *Garland* v. *Rowan,* 2 S. & M. p. 629.

It is contended by counsel that inasmuch as he says that in all cases in which a foreign will has been renounced, it has been first renounced in the foreign jurisdiction, where the will was originally probated, and that we must first show the right to renounce in the foreign jurisdiction. There are answers to this, each of which is sufficient. The first one is, as we have stated before, that the statutes of Mississippi are exclusively and entirely free from the statutes of other jurisdictions, controlling in the disposition, transmission and devising of real estate in Mississippi. Next, in the case at bar the court of original probate was that of Prentiss county, Mississippi, selected by the executor and guardian, and the executor is now estopped to deny that we are entitled to renounce the will in this court in which he invited us to appear and litigate these matters.

In the first case cited by counsel, that of *Garland* v. *Rowan,* the will was probated in Virginia and was also probated in Mississippi; and the will was renounced by the widow in Virginia and was likewise renounced in Mississippi. The will was not probated here, it seems, as counsel maintains by an authenticated copy, but was probated in the regular manner; and the will seems to have been likewise renounced in Mississippi, and the court did not hold that the widow had no right to renounce the will.

In the next case cited by counsel, that of *Slaughter* v. *Garland,* the question of the right to renounce the will and thereby take real estate located in Mississippi was not before the court at all. The only question before the court in that case was the right to take personal property after having renounced the will, and anything that may have been said by the court in that case with reference to real estate is necessarily *dictum.*

The case of *Wilson* v. *Cox,* relied upon so strongly by counsel, has no bearing whatever on the question at issue in this case for the reason that the question before the court here was not before the court in the Wilson case. In that case, the decedent has his domicile at the time of his death in Louisiana. He owned property in both Louisiana and Mississippi. His will disposed of his property in Louisiana, but made no disposition whatever of his property in Mississippi. The court simply held that inasmuch as the will did not dispose of the property in Mississippi, it had no effect whatever upon its transmission and the property would therefore descend according to the laws of descent and distribution of Mississippi. The court did have a great deal to say about the renunciation of wills in a foreign jurisdiction, but, as this question was not before the court, anything said by the court along this line was *dictum.*

In the other case, *Doran* v. *Beale,* 106 Miss. 320, the domicile of the testator was Illinois, Chief Justice SMITH speaking for the court said: "We have not been advised and have not endeavored to ascertain what the law of

Illinois is relative to the right to renounce a will, and the effect thereof upon the descent of land therein devised. We will assume, as counsel evidently have done, that it was necessary for appellant to renounce the will; that this was properly done in Illinois; that effect will be given thereto here."

The court therefore treated the matter of the renunciation of the will in Illinois as unimportant, and it is clearly indicated that the will could have as well been renounced here. In other words, it is intimated by the court that the renunciation in the court of Illinois will be treated by the court in the same manner and given the same effect as if the renuciation had been made here. In this opinion of *Doran* v. *Beale,* the cases of *Garland* v. *Rowan,* *Slaughter* v. *Garland,* and *Wilson* v. *Cox, supra,* are explained; and we plant ourselves in this case squarely upon the decisions in the case of *Doran* v. *Beale* and the case of *Woodville* v. *Pizatti, supra.*

The other case cited by counsel, *Phelan* v. *Beale,* 94 Miss. 230, and *Neblett* v. *Neblett,* 112 Miss. 550, simply held, as did *Doran* v. *Beale* and *Woodville* v. *Pizatti,* a long line of decisions in this state, that the law of the forum is exclusive in the transmission of real estate in Mississippi; and we therefore, say that, on this question of the right to renounce the will, the decree of the court below should be affirmed.

*E. C. Sharp,* for appellee.

It is a well settled rule in this case that a husband may renounce the will of his wife and take the same interest to which he would have been entitled had she died intestate. But it has also been the rule that in the case of nonresidents he would take only such interest as he could claim in the state of his domicile.

This being the rule, what interest can the husband claim in this estate? In Tennessee, the state of his domicile, he has no right to renunciation. However, he can claim

a dower interest in the real estate but no part of the personality. In this state dower having been abolished it appears to us that his rights are limited to a dower interest in the homestead which the wife owned in Memphis, Tennessee.

As the matter of renunciation is being fully discussed and briefed by the counsel for Mrs. Barnett, we will not attempt to cite authorities bearing upon this question.

*J. E. Berry,* for appellee.

At the outset of this discussion we submit the following proposition as to the universal rule in matters of this nature, namely: Where a non-resident is permitted to come into the courts of this state, and renounce the will of his deceased, non-resident wife, his rights as to her personal estate will be measured here in accordance with the laws of the state of their domicile.

As far back as 1844 this rule was laid down in *Garland* v. *Rowan,* 2 S. & M. 613. In that case the testator lived in Virginia, and owned personal property in this state. The will was probated there, and was there renounced by the widow. Under the law of the state she might renounce the will and take one-third of the personal property, while under the laws of this state under similar conditions she might renounce and take one-half of the personal property, if a resident of this state. The widow filed a bill here asking for one-half of the personal property, setting out the fact of her renunciation in Virginia, etc. On page 629 the above rule is laid down, holding that her rights in the personal property here were measured by the laws of Virginia. This rule has never been departed from, but in practically every decision of our supreme court since that time in cases of this character the doctrine has been re-announced.

In 1873, the case of *Slaughter* v. *Garland,* 40 Miss. 172, reaffirmed the doctrine without modification, the gist of the opinion appearing in the first paragraph on page 181.

The same is true in the following cases: *Wilson* v. *Cox,* 49
Miss. 539; *Phelan* v. *Ball,* 94 Miss. 293; *Doran* v. *Beale,* 106
Miss. 305; *Neblett* v. *Neblett,* 112 Miss. 550.

From these authorities it appears conclusively that the
measure of W. J. Bolton's rights in the personal property
of decedent must be determined by the law of Tennessee.
Nor can he escape this inflexible rule by invoking section
1389 of Hemingway's Code, which provides for the descent
and distribution of personal property, since this section
his been held to apply only to property of intestates and
does not obtain where the property in question has been
conveyed by will. *Slaughter* v. *Garland,* 40 Miss. 178 and
179.

We come now to the last question in this case, namely
whether or not the surviving husband can renounce the
will of his non-resident wife and take a child's portion of
her real estate in this state.   The rule controlling the
rights of the husband in real estate is as well established
as the foregoing rule pertaining to personal property, and
according to practically all, authorities, the rights of all
parties in real estate will be governed by the laws of the
state where the property is situated.

The above-named rule determining these rights in real
estate was laid down in the case of *Garland* v. *Rowan,*
2 S. & M. 617, which is to the effect that the rights of liti-
gants in real estate must be determined by the law of this
state.   But what is the law of this state?   It is something
more than a mere statute of descent and distribution, for
the statute of renunciation must first be complied with.
Section 3374, Hemingway's Code, provides that the will
must be legally renounced within six months after pro-
bation.   It goes without saying, of course, that if the will
is not legally renounced, its provisions will obtain.

But what steps are necessary for a non-resident husband
to take in order to renounce his wife's will?   On this point
the statute is silent, and we must turn for reply to the
decisions and precedents heretofore established.   In every
case in which our supreme court has spoken, it appears

that the contestant of the will came into our courts in this state and first of all showed that he had renounced the will in his own state, before seeking to do so here. In such instances his right of renunciation has been recognized in our courts; but since the statute does not authorize directly the recognition of such renunciation by an alien, the courts of this state have universally given as their reason for doing so that the contestant had a similar right in his own state, and that under the law of comity existing between sister states that right conferred upon him by the statutes of his own state would be recognized here. A careful review of all the decisions of our courts will disclose no other reason offered for permitting an alien to file his renunciation here. *Garland* v. *Rowan*, 2 S. & M. 613; *Slaughter* v. *Garland*, 40 Miss. 172; *Wilson* v. *Cox*, 49 Miss. 539; *Phelan* v. *Ball*, 94 Miss. 230; *Doran* v. *Beale*, 106 Miss. 305; *Neblett* v. *Neblett*, 112 Miss. 550.

In all of these cases, except the Wilson case, the contestant came from a state which recognizes and which gives to its citizens, by statute, the right of renunciation. But in the case at bar it will be observed that the state of Tennessee has denied to appellant, W. J. Bolton, the right of renunciation, such rights being unknown to the law of that state.

If now he seeks to have his renunciation recognized by the courts of this state, he must offer some other reason than that universally adhered to in the foregoing opinions, viz.: the right to have his renunciation recognized here because of the laws of comity existing between sister states. He comes as an alien, and asks that sections (5086 & 3374), Hemingway's Code, which was enacted solely for the citizens of this commonwealth and which have been extended far enough to include non-residents who have similar rights in their own state, shall now be stretched still further, to the extent that it may operate in favor of a stranger who has no such rights at home, and whose claim here is not endorsed by the state of his domicile.

In reviewing all of the foregoing decisions it is interesting to observe that in every instance our court has jealously guarded and guided the steps of the non-resident contestant. This state has been very careful to see that the non-resident should obtain no further rights in this state, by renunciation, then he could obtain in his own state by the same act. They have also watched carefully to see that there should be no inconsistency between the holdings of the different states, full discussion of which general principles will be found in the first three cases named above.

The proposition laid down above, viz.: that in order to renounce a foreign will in this state, one must first show a statutory right to renounce the same in the state of the testator's domicile, is not only supported by reason, and by all of the foregoing precedents, but is also positively announced in the case of *Wilson* v. *Cox,* 49 Miss. 642. In so far as I have been able to ascertain, this is the only case in our reports substantially parallel to the case at bar.

Our Code does not design to interfere with foreign wills. It must be remembered that the right to oppose a will and defeat it is a qualification of the testamentary power and belongs to the law which confers the power to make the will; and so the extent to which the will may be opposed and the method by which it must be defeated must be determined by the law of the testator's domicile. Story on Conflict of Laws, 349, secs. 474, and 479C.

It is true that the *Slaughter* v. *Garland* case, was dealing with the disposition of personal property, but real property as well as personal property when conveyed by will can only be acquired through renunciation, and the question in that case was first of all whether there could in fact be a legal renunciation. If so, then the contestants here would renounce and take certain interests; if not, then the contestant could only file here authenticated copies of his renunciation at home and then take such interests as the law warranted.

We respectfully submit that the surviving husband had no right to have his renunciation recognized in our court because like one in the scriptures he sought to come into the feast wearing no wedding garment. He cannot enter here without his credentials. He cannot cross over the border line without the necessary passport. The state of Mississippi owes him no such recognition and the statute gives him none. The only obligation this state assumes is that of showing recognition to the laws of a sister state and of extending to her citizens here the same rights their statutes provide for them at home in matters of renunciation.

It may be that the authorities on this point are not numerous but we submit that in the only two cases where this court has had the matter up for consideration, namely the *Slaughter* v. *Garland* case and the *Wilson* v. *Cox* case, this court has committed itself definitely and affirmatively to the holding that the appellant W. J. Bolton has no right of renunciation here and which ruling it expressed in its own plain language, saying:

Appellant "could not avail himself of the statute allowing a renunciation, because the law of the state of his domicile recognizes no such right."

SYKES, P. J., delivered the opinion of the court.

By this appeal we are called upon to decide whether a will duly executed by Mrs. Bolton, deceased, was revoked by a letter testamentary in its character, wholly written and signed by her, or whether the letter was merely a codicil to the will; also to construe the will and to decide the right of the appellant Bolton, husband of testatrix, to renounce the will, and what part of the estate, real and personal, he takes upon renunciation. The question is also presented as to the respective rights of the fathers of the two sets of children to be appointed guardian of the estate as well as of the person of the minors.

These questions are presented upon the following facts: Mrs. Bertha Bolton, testatrix, was twice married. By hir first husband, Mr. Robinson, she had two children, Sidney and Elizabeth, who both survive her. After being di-

vorced from Mr. Robinson she was married to Mr. Bolton. She left surviving her Walter Bolton, an infant, the fruit of this second marriage. Her husband, W. J. Bolton, also survives her.

Testatrix lived practically all of her life and until a few years before her death in Prentiss county. With the exception of a home in Memphis and some little personal property, all of her estate, both real and personal, was in Prentiss county, Miss. This estate consists principally of real estate and an indebtedness evidenced by promissory note of something over ten thousand dollars due her at the time of her death by her brother, W. T. Barnett. This debt of Barnett to his sister grew out of the fact that for many years he had managed his sister's affairs as her agent in Booneville, Miss., collecting the rents from her plantation and other real property, and generally looking after her financial affairs for her. While living in Prentiss county, the testatrix executed and published a will herein below set out in full. Some time after this will was published the testatrix changed her residence from Mississippi to the city of Memphis, Tenn. Shortly before having an operation performed, and appreciating the seriousness of it, and realizing that she might not survive, she wrote a letter addressed to her brother and children. Those parts of it testamentary in character material to the questions here involved will also be herein set out in full.

The learned chancellor held that this letter was in fact a new will of testatrix revoking the former will. He appointed W. T. Barnett guardian of the estates of the three minors, and held that the husband had a right to revoke the will in Mississippi and was entitled to a one-fourth (a child's part) of the realty, but to no part of the personal property, that Sidney and Elizabeth Robinson were devised the plantation, and that the balance of the property under the will was given to the three children share and share alike. It was also held that the indebtedness due by Barnett was due to the deceased, and not to Sidney and

Elizabeth. All parties interested appealed from this decree.

The will is as follows:

"I, Bertha Barnett Bolton, being above the age of twenty-one years and of sound and disposing mind and memory, do make, publish and declare this my last will and testament, revoking all other wills of whatsoever nature.

"First. I desire that all my just and legal debts be paid by my executor.

"Second. I will and bequeath to my daughter Elizabeth my undivided interest in my present homestead, and in case I shall hereafter purchase the entire interest therein, then I will and devise to her said entire interest. In case I should fail hereafter to purchase said outstanding interest, it is well here to state that up to the time of the making of this will said homestead has cost four thousand seven hundred dollars of which I furnished three thousand dollars, and my husband W. R. Bolton furnished one thousand seven hundred dollars, in which proposition the undivided interests stand. If at my death the interest of my said husband has not been purchased as aforesaid, then if possible I should like for Elizabeth to purchase same and retain the home as her own.

"Third. I give and bequeath to my daughter Elizabeth the following personal property, to wit, my mahogany china closet, serving table, and library table, all my china and cut-glass, all linen, counterpanes, and furniture of whatsoever nature that I may die possessed of; also my kitchen and aluminum ware; also my largest diamond ring and my diamond ear screws; also a set of children's library books; also the piano in my mother's home. In reference to said piano I here desire to state that I have purchased same from my mother by paying an older piano at the time of purchase and two hundred fifty dollars (my mother paying two hundred dollars), and also paying my mother a large oak bookcase now in her home. The understanding was that my mother should keep the piano as

long as she lived or as long as she desired, after which it should be given to Elizabeth

"I also give and bequeath to Elizabeth half of all my hand-painted pictures, the remaining, half to be given to my son Sidney, same to be distributed between said children by my executor as his judgment dictates, half and half.

"Fourth. I give and bequeath to my son Sidney my small diamond ring with the request that he use same as a stud; I give and bequeath him also my automobile, with the provision that in case my executor deems him not sufficiently old to own and operate a car then executor shall sell said car and invest proceeds therefrom as his judgment dictates, and thereafter at such time as said executor deems proper he shall reinvest said proceeds in a car for my son Sidney.

"Fifth. I give bequeath and will all my stock in the Barnett Supply Company to my two children Sidney and Elizabeth, with the hope that they may continue to own said stock under the management of their uncle W. T. Barnett as I have heretofore done.

"Sixth. I give and devise to my son Sidney the furniture store in Boonville, now occupied by W. K. McMillian, which I deem the equivalent of the above homestead interest devised to Elizabeth.

"Seventh. I give and devise all my other real estate of which I may die seized and possessed to my two children Sidney and Elizabeth, subject to conditions hereinafter more fully set out in section ten of this instrument.

"Eighth. All my other property of whatsoever nature of which I may die possessed not herein above specifically devised and bequeathed, I give to the heirs of my body share and share alike according to the laws of descent and distribution, with the expressed provision that my hereinafter named executor shall have charge and control of same in the same way and manner as is provided for hereinafter.

"Ninth. I herein and hereby appoint my brother W. T. Barnett as executor of this will and also as trustee of all the property left to my said heirs, and having full confidence in his integrity and ability I hereby especially provide that he be not required to give bond or make reports to the courts in any way, of which things I here relieve him both as executor and trustee.

"I desire that he act in the above-named capacity delivering property to my children in accordance with the provisions of this instrument where such provisions are made, and in all matters where specific provisions are not made that he handle, control and manage my estate as he deems proper, delivering to my children from time to time such portions of the proceeds and revenue therefrom as their needs and stations in life may in his judgment require. I here empower him to handle all my personal property as if it were his own, to invest proceeds, sell portions and do any and all such things therewith as I myself could do if alive, in all of which transactions his judgment shall be final.

"I desire, but do not demand, that in as far as possible the property be kept intact and that only the income be spent or exhausted, but in case of sickness or other serious emergency, of which the said W. T. Barnett shall always be the sole judge, he may sell, consume or dispose of such portions of my personal estate as he deems best for the welfare of the beneficiaries of this will. This power is to be exercised with caution, but there shall be no question as to his authority to so act.

"Tenth. The devises made to my two children Sidney and Elizabeth in section seven (7) of this instrument shall be restricted and qualified as follows; the lands therein devised shall not be sold in whole or in part until Elizabeth shall have reached the age of thirty years, or in case she die prior thereto, then until Sidney shall have reached the age of thirty years, at which time my two said children shall have ample authority to dispose of said land as they see fit and shall have full power to make good and

valid deed thereto, but they are especially denied the power to make deeds to or incumber said lands in any way prior to said time.

"I desire that said lands be held by my trustee for the use and benefit of said children until said time, to-wit, until Elizabeth shall have reached the age of thirty years, or in case she die prior thereto then until Sidney shall have attained the age of thirty years. When each of said children shall have reached the age of twenty-one years, or at such time thereafter as the trustee shall in his judgment deem proper, he may turn over to said children, to either or to both of them, the real estate so held by him, allowing them or either of them the management and control thereof in whole or in part my desire being that if as each of said beneficiaries reach the age of twenty-one he or she be deemed capable of managing and controlling properly said interests, then the trustee may so permit if his judgment approves the same.

"Eleven. Having received practically all of my property from my late father S. M. Barnett, and remembering well his oft-repeated wishes, this will is drawn largely in accordance with his desires, especially as to devises herein made of real estate.

"Witness my signature this, the 26th day of August, 1916.

"BERTHA BARNETT BOLTON, Testatrix.

"G. W. BROWN, Attesting Witness.

"C. R. LACY, Attesting Witness."

That portion of the letter material to this controversy reads as follows:

"Baptist Memorial Hospital,
Memphis, Tennessee.

"Saturday 2-27-21. To my Brother and Children: I realize I am sick & may not be able to stand the operation. I want Will my brother to be guardian of my children. I want Sidney and Elizabeth to have farm as I feel the three will be divided, and S & E can and will work together. I want Walter, my baby, to share equally in everything else.

. . . He has certainly been the life of me. Allen has ask for the children, Sidney and Elizabeth. I'll let him have them as long as he stays single. . . .

"I want Sidney to have a business education E to finish high school and have one year in Washington in a coed school. . . . I want Will to divide to best of his knowledge. . . . If its law, I will state I'll leave one dollar to him (speaking of Mr. W. J. Bolton). . . .

"[Signed] BERTHA B. BOLTON."

Subsequent to the execution of this will Walter Bolton, Jr., was born. It is evident that the testatrix when the letter was written was very doubtful as to her recovery from the operation. In her will she had not only provided for the disposition of all of her property, but had also appointed her brother W. T. Barnett trustee of the estate, granting to him therein discretionary powers as to its care and management and what parts thereof should be used for the care and education of the minors. This will, in short, is expressive of the trust and confidence in the integrity and best judgment of her brother therein made executor. When the letter was written, the testatrix was, of course, aware of the fact that she had failed to provide for Walter Bolton, Jr., in this will, and the dominant purpose of writing this letter was to make provision for this child. While this letter makes reference to practically all of her estate, we do not think the purpose of it was to revoke the former will, but rather to modify certain of its provisions by giving Walter Bolton, Jr., a share in all of the property, both real and personal, except the plantation devised to Sidney and Elizabeth. On its face this letter does not revoke the former will; neither can we say it is clear that by this letter she meant to dispose of all of her property. On the contrary, we are of the opinion that she meant for the will, with its elaborate scheme of the management of her property, to remain in full force and effect. She merely meant to reiterate in the codicil that she wished Sidney and Elizabeth to have the farm and to give her reason therefor, and why she apparently was dis-

criminating against her youngest child. We think that the fact that the letter is addressed to her brother, already appointed by her executor of her will and trustee of the estate therein conveyed, negatives the fact that she intended to revoke this will and these appointments under the will, but rather addressed the letter to him because of the powers previously given him in the will.

We do not think that she meant to revoke the specific devises in the will to Sidney and Elizabeth, but to modify them to the extent that Walter is to share equally with Sidney in every specific devise to him, and equally with Elizabeth in every specific devise to her. In addition to sharing equally in these specific devises to Sidney and Elizabeth, Walter Bolton, Jr., under item 7 of the will, is given an undivided one-third interest, with Sidney and Elizabeth, in all other real estate not specifically devised. Walter Bolton, Jr., under the last clause of item 4 of the will as modified by the codicil, takes an undivided one-third interest equally with Sidney and Elizabeth in the hand-painted pictures, to be distributed by the executor among these children as his judgment dictates. This judgment of the executor is also referred to in the codicil, wherein she reiterates that he is to divide to the best of his knowledge. The eighth item devises to these three children share and share alike any other property not specifically devised by the will.

The will made no mention of her husband, and in this letter, which we construe to be a codicil to the will, she left him one dollar.

After a careful consideration of the will, the letter, and the testimony in the case, we conclude that the letter is a codicil to the will, and the construction of the will and the codicil is as above announced.

It becomes unnecessary to decide the question as to the rights of the two fathers to be appointed guardian of the estates of the minors for the reason that by the will W. T. Barnett is appointed trustee of the estate.

The land devised by testatrix to her children Sidney and Elizabeth was land devised to her by the will of her father, the devise reading, "to my daughter Bertha and the heirs of her body." Under this devise she received title in fee simple to the property. Devises of this character, being *fee-tail* estates under our statutes (section 2765, Code of 1906; section 2269; Hemingway's Code), are converted into estates in *fee simple.* *Dibrell* v. *Carlisle,* 48 Miss. 706; *Davenport* v. *Collins,* 95 Miss. 358, 48 So. 733; *Liberty Bank* v. *Wilson,* 116 Miss. 377, 77 So. 145, and authorities therein cited.

The will and codicil were offered for probate and construction in the chancery court of Prentiss county in the first instance. There has been no probate of the will in Tennessee, though the domicile of the testatrix at the time of her death was Tennessee. It therefore becomes pertinent to decide whether or not the chancery court of Prentiss county had jurisdiction of this original probate. At the time of her death the testatrix owned both real and personal property in Prentiss county. Section 1669, Hemingway's Code (section 2004, Code of 1906), reads as follows:

"Authenticated copies of wills, proven according to the laws of any of the states of the Union, or of the territories, or of any foreign country, and affecting or disposing of property within this state, may be admitted to probate, in the proper court; but such will may be contested as the original might have been if it had been executed in this state, or the original will may be proven and admitted to record here."

For many years and perhaps prior to the Code of 1880 this law appeared upon our statutes without the last clause therein. Certainly in Code, section 1976, the addition to this section was made, which addition reads as follows and has since been included in our law: "Or the original will may be proven and admitted to record here." Prior to this amendment our decisions, with some exceptions, treated the probate and administration here as merely auxilliary to that of the domicile of the testator.

In the case of *Bailey* v. *Osborn,* 33 Miss. '128, the court held that the probate court was without jurisdiction to grant probate of an original will of a person domiciled at the time of his death in a sister state. It was held in that case that the will could only be probated in the first instance in the state of the domicile of the testator.

A contrary statement is made in the case of *Still* v. *Woodville,* 38 Miss. 646. In this later case, however, since the court had decided that the testator was domiciled in Mississippi, it became unnecessary to decide that a foreign will could be originally probated in this state.

The case of *Slaughter* v. *Garland,* 40 Miss. 172, which deals with the right of a wife to renounce her husband's will, proceeds upon the theory that the administration in this state is auxiliary to the original administration at the domicile of the testator. In fact, this case expressly decides that the state of the domicile of the testator has the exclusive power to admit the will to probate.

The case of *Carroll* v. *McPike,* 53 Miss. 569, decided that under Code 1871, section 1950, and before the amendment to this section above pointed out:

"The general doctrine, as declared by Story, in Conflict of Laws, section 518, is that an administration in any other country than that of the domicile of the deceased is treated as in its nature ancillary merely to that in the country of the domicile, because 'the final distribution of his effects among his heirs or distributees is to be decided by the law of his domicile.' This reason wholly fails in its application to this state, and the doctrine built on it is entirely subverted by our statute, declaring that personal property situated in this state shall descend and be distributed according to the laws of this state, notwithstanding the domicile of deceased may have been in another state. Code, section 1950. In this state administration of the effects here of a deceased person, no matter where his domicile was, is independent of all other administrations, and to be conducted in all respects as if the decedent had been a citizen of this state when he died."

To the same effect is *Partee* v. *Kortrecht,* 54 Miss. 66.

Section 1950 of the Code of 1871, referred to in these opinions as abolishing ancillary administrations in Mississippi, is now section 1648 of the Code of 1906 (section 1380, Hemingway's Code).

In the case of *Slaughter* v. *Garland, supra,* the court was called upon to construe this section as article 110, p. 452, of the Revised Code of 1857. The court there held that this section only applied to property not bequeathed under the will, though the will were renounced; in other words, that it only applied to personal property of which the testator died intestate. This case, however, failed to draw the distinction that this section abolished ancillary administrations in Mississippi. But the whole trend and the reason upon which the opinion in *Slaughter* v. *Garland* is based is that the administration in Mississippi is merely ancillary. Before the addition to the section relating to foreign wills above pointed out as first appearing in the Code of 1880, it will be seen that this court in *Carroll* v. *McPike and Partee* v. *Kortrecht, supra,* had held that by virtue of section 1950 of the Code of 1871 ancillary administrations here were abolished, and that any probate here was in effect an original probate. Certainly, however, if there could have been any further question about the matter, the express provision as now appearing that original foreign wills may be proven and admitted to record here now gives the chancery court jurisdiction to receive this probate whenever real or personal property is located within that county.

Under section 1669, Hemingway's Code (section 2004, Code of 1906), relating to the recording of foreign wills, two methods may be followed: First, the authenticated copy may be admitted to probate; or, second, the original will may be proven and admitted here. Speaking of the first mode, the court, in the case of *Heard* v. *Drennen,* 93 Miss. 236, 46 So. 243, stated:

"The only effect of this section is to dispense with the necessity of original proof of foreign wills when presented

for probate in this state, where the will has been duly proved according to any of the laws of any of the states or territories of the Union, or of the foreign country, where admitted to probate but, while this is true, the statute does not give any conclusive effect to the foreign probate of a will, and is very careful to protect the right to contest it when presented here, as the original might have been if it had been executed in this state. In other words, the only effect of Code 1906, section 2004, is to dispense with formal proof of the due execution of the will where it has been proved according to the laws of any other state. . . In so far as the will itself is concerned, it is treated in all respects as an original will, and all the rights to be derived through the will must be derived from its terms administered according to the law of this state, so far as it affects property situated here."

Under section 3374, Hemingway's Code (section 5086, Code of 1906), the husband renounced this will and elected to take in lieu thereof his legal share of the estate. This statute provides that thereupon he shall be entitled to such part of her estate, real and personal, as he would have been entitled to if she had died intestate.

Since the husband has not this right of renunciation under the law of Tennessee, the domicile of the testatrix, it is earnestly insisted that he cannot exercise this right here. The chancellor held that he was entitled to renounce the will here and entitled under this statute to take a child's part (one-fourth) of real property, but none of the personalty; that as to the real estate *lex rei sitae* governed, but as to the personal property the law of the domicile of the testatrix governed, and under the law of Tennessee the husband, upon renouncing the will, took no part of this personal estate. The case of *Slaughter* v. *Garland, supra,* is cited as authority for the decision of the chancellor. In this case and other cases (*Doran* v. *Beale,* 106 Miss. 305, 63 So. 647) relating to the right of renunciation this right was given under the law of the domicile of the testator. We have no case in this state where a husband or wife at-

tempted in the first instance, as in this case, to renounce the will, nor a case where this right was denied at the domicile of the testator. In the case of *Garland* v. *Rowan,* 2 Smedes & M. 617, cited in the case of *Slaughter* v. *Garland,* the domicile of the testator in both instances was in Virginia, and the widow renounced originally in Virginia. In these cases the court held that the law of Virginia governed with reference to personal property, and that the wife was only entitled to take upon renouncing, such share of the personal property situated in this state as she was entitled to by virtue of her renunciation in Virginia.' In the latter case it is held that with reference to real property the law of Mississippi governed. In the latter case it was further held that the statute relating to the descent and distribution of personal property only applies to that not bequeathed under the will, but only relates to intestate property. The reason for applying the rule of the law of domicile with reference to the personal property in the *Slaughter case, supra,* is briefly summarized in these paragraphs of the opinion:

"But the right of renunciation is available only in the proper tribunal of the testator's domicile. It is an incident to the jurisdiction of the tribunal which has the exclusive power to admit the will to probate, and proceeds from the jurisdiction over the matter of probate. Otherwise there might be a renunciation of the will in a foreign state, while it would be in full force in the state of the domicile, which would be absurd. The tribunal having jurisdiction both of the probate and of the incident of revocation is manifestly the proper court of the domicile of the testator.

"There is no warrant in our laws for renouncing a foreign will here by exhibiting in the probate court here a copy of the renunciation made in the proper court of the testator's domicile. Such a proceeding could only have the effect of evidence that the renunciation had been made in the proper tribunal, and to entitle the party here to whatever rights she might have by the laws of that domi-

cile, and to affect property of the estate here, through the ancillary administration here. It could not have the effect of a legal renunciation made here, because it is unauthorized by our laws, and because the act of renunciation pertains to the forum of the domicile.

"But if it be conceded that the renunciation in Virginia had the effect to create an intestacy as to the widow, so as to entitle her to her legal share of the estate there, her rights would be regulated by the law of that state, where alone the renunciation was made in law; and she would not be entitled to distribution under the laws of this state, because there is not, and cannot be, any valid renunciation here having a different effect upon the rights of the widow from that of the law of Virginia. And this is fatal to the claim set up in her petition to a share of the estate according to the laws of this state."

The reason given for this rule having ceased in this state, the rule itself must cease.

The foundation stone of the rule is that this is but an ancillary administration, and that the court, with reference to the personal property, will enforce by comity the law of the domicile of the testator. Because of our present laws, in some ways peculiar, with reference to personal property, and especially so because of the special permission to originally probate a foreign will here, these probates and administrations are now original, and in no way ancillary to the probate at the domicile of the testator.

Since the original will may be probated here, it follows as a matter of right and justice that it may be renounced here in accordance with our statute upon renunciation. The *Garland case, supra,* says the right of renunciation is available only in the proper tribunal of the testatrix's domicile because it is an incident to the jurisdiction of the tribunal which has exclusive power to admit the will to probate, and proceeds from the jursdiction over the matter to probate. Under our present law our court has the jurisdiction to admit the will to probate in the first

instance, and therefore the right of renunciation pertains to this tribunal. We neither look to the state of the domicile of the testator for the power to renounce nor to the share to be taken upon the renouncing of the will either of the real estate or the personal estate situated here, but look to our own laws for both because of the original probate of the will here. Under our laws the husband has the right to renounce the will. This statute does not give the right of renunciation to only citizens of this state, but gives it to any husband or wife upon the probate of the will of the deceased.

The chancellor was correct in decreeing that the husband had the right to renounce the will and in holding that he was entitled to a child's part of the realty. He erred, however, in not also holding that he was entitled to share equally with the three children in the personal property. This personal property was situated in Mississippi. It accrued partly from the rents and profits of the real estate and from the other business of the testatrix transacted in Mississippi through her brother, who was her agent. This personal property had always remained in Mississippi in the care and custody of her brother. Its *situs* therefore was here. Where the owner of a debt so deals with it as to establish an intention to locate it there, or if the debt arises as an incident to business conducted in this state, the statute applies. *Jahier* v. *Rascoe,* 62 Miss. 699, *Richardson* v. *Neblett,* 122 Miss. 723, 84 So. 695, 10 A. L. R. 272.

In conclusion we would state that, since the right to probate in the first instance a foreign will dealing with real and personal property situated in this state is expressly provided for by statute in this state, and is treated as an original proceeding, and not an ancillary, the right to renounce the will in this state is necessarily governed by our statute of renunciation, and not by the law of the domicile of the testator, and that the right to share in the real and personal property of the deceased is governed by our statute upon renunciation.

*Reversed and remanded.*