**GOULD, Estate of, In re.**

Probate Court, Hamilton County.

No. 195226.   Decided June 19, 1956.

290

Bradley, Foiles & Saeman, for Frederic John Gould, surviving spouse of Helen F. Gould, deceased.

Graydon, Head & Ritchey, John W. Warrington, for The Fifth Third Union Trust Company, Executor and Trustee of the Estate of Helen F. Gould, deceased.

## OPINION

By DAVIES, J.:

The Fifth Third Union Trust Company, executor and trustee of the estate of Helen F. Gould, deceased, has filed a motion to have the election

of Frederic John Gould, the decedent's surviving spouse, declared null and void, held for naught, and stricken from the record. The surviving spouse, in turn, has presented a motion to strike the executor's said motion from the record.

Helen F. Gould died testate on March 8, 1954, on which date she was domiciled, and resided, in Pembroke, Bermuda, a crown colony of the United Kingdom. Her will was admitted to probate in the Probate Court of Hamilton County, Ohio, on April 29, 1954, under the provisions of §2107.11 R. C., which provides that "a will shall be admitted to probate— (A) In the county in which the testator was domiciled if, at the time of his death, he was domiciled in this state; (B) In any county of this state where any real or personal property of such testator is located if, at the time of his death, he was not domiciled in this state, and provided that such will has not previously been admitted to probate in this state or in the state of such testator's domicile."

The decedent left personal property (valued at $126,723.08) located in Hamilton County, and her will has not been admitted to probate in any other jurisdiction. Both Mr. and Mrs. Gould were citizens of the United States.

On May 5, 1954, the surviving spouse made an election to take under his wife's will, and on September 26, 1955, this election was set aside for technical reasons and the surviving spouse was given sixty additional days within which to make an election. On October 11, 1955, the said widower personally appeared in open court and elected not to take under the will of his deceased wife.

It is toward this latter election that the executor has directed its present motion to strike, contending that Mr. Gould, as the surviving spouse of a decedent who was domiciled in Bermuda, has no right of election under Ohio law. Mr. Gould, in his motion, contends that this motion of the executor should be stricken from the files on the two following grounds, to-wit: (1) on September 26, 1955, on motion of Frederic John Gould, filed January 28, 1955, this court entered its order granting him sixty days additional time to make his election whether to take under the will or under the laws of descent and distribution of Ohio, and to which order the executor reserved its exceptions (arguing that the entry allowing Mr. Gould additional time to make his election was a formal finding that such right of election existed); (2) that the executor is not a proper party in interest to question the legal right of the surviving spouse to make his election.

Under the law of Bermuda, a surviving spouse has no right to elect whether to take under the law or under his deceased spouse's will.

The surviving spouse, in questioning the authority of a fiduciary to object to a relict making an election, contends that the right or lack of a right of a surviving spouse to make his election does not come within the purview of the duty, responsibility, nor concern of the personal representative. We cannot agree with this position. It is the duty of an executor to inventory, administer, and distribute the estate of his testator in accordance with the terms of the will and with established legislative and judicial law and procedure. When doubtful as to the

law or procedure in the administration of an estate, it is the right and duty of the executor to present for determination, by suitable motion or pleading, such doubtful question before the appointing court or other tribunal having jurisdiction in the matter. For the purpose of determining if distribution should be made under the terms of a will or under the provisions of law when a surviving spouse has elected to take against a will, an executor has the right to object to the making of an election by such spouse.

In the instant case, the executor is also testamentary trustee of the decedent's estate, and in this latter capacity it is the trustee's paramount duty to preserve and protect the trust estate in compliance with the terms of the trust. 90 C. J. S. 231, 40 O. Jur. 375. The trustee also owes a duty to the cestui on taking over property from the executor to examine the property tendered and see if it is that which he ought to receive. **Trust and Trustees**, Bogart, Vol. 3, Sec. 583, P. 15.

The Fifth Third Union Trust Company, both as executor of the estate of Helen F. Gould, deceased, and as trustee under her will, for the reasons stated, has the right to object to the widower's election to take against said decedent's will.

The surviving spouse further contends that the fiduciary's motion to strike the election from the record should be overruled because the granting by the court, on September 26, 1955, of sixty days additional time in which the spouse could make his election "was a formal finding that such right of electing existed," and the matter is now **res judicata.** Briefly stated, the doctrine of **res judicata** is that an existing final judgment or decree, rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties or their privies, in all other actions or suits in the same or any other judicial tribunal of concurrent jurisdiction. 23 O. Jur., 961.

The entry of the court granting the spouse sixty additional days in which to make his election was not expected to be, and was not, a judgment rendered upon the merits of the question of the spouse's right, or lack of right, to make an election to take against his wife's will.

It is not disputed that the succession to real property is determined by the law of the situs of the property unless the statute of the situs provides otherwise. **Eliza Jennings v. Wm. Jennings, 21 Oh St 56; Restatement of the Law, Conflict of Laws,** Sec. 245 ff; 11 Am. Jur., 342.

In the Jennings case, William Jennings died testate while domiciled in West Virginia and his will was admitted to probate in West Virginia and also admitted to record in Mahoning County, Ohio. Eliza, the surviving spouse, filed a suit for partition and dower in Mahoning County (Ohio). The widow elected in the West Virginia court to take under the law. The law of Ohio provided that when duly executed and proved according to the law of the testator's domicile, authenticated copies of such wills and probate, when admitted to record in this state, and duly recorded "shall have the same validity as wills made in this state, in conformity with the laws thereof, are declared to have." The court (p. 79) reasoned that both foreign and domestic wills are subject to

the same general laws of construction, unless the statute provided otherwise. The court concluded that the laws of Ohio govern in the construction of wills disposing of lands situated in Ohio. See also **Bailey v. Bailey, et al., 8 Ohio 239.**

In **Swearingen, Adm. v. Morris, 14 Oh St 424,** a domiciliary fiduciary was appointed in Pennsylvania, an ancillary administrator was appointed in Ohio, and a controversy developed concerning the distribution of property found in Ohio. The court approved the general principle that personal property has no fixed situs and adheres, in contemplation of law, to the person of the owner and is disposed of according to the **jus domicilii.**

The court (p. 429), however, stated that "while this is the general rule, - - - - a limitation, as well settled as the rule itself, makes an exception in respect to debts; and no state is under obligation to permit the personal estate of a deceased debtor to be withdrawn until the claims of his creditors, resident in the state where the property is found, have been first satisfied." The court further stated: "from this limitation, and to give it effect, results the established doctrine, that a grant of administration in the state where the deceased resided, does not, as a matter of right, extend beyond the territorial limits of such state, nor confer title to movable property situated in other states; - - -. Whatever relaxation of this doctrine obtains, arises ex comitate, and, of course, is subject to be controlled or modified as each state may think proper, with reference to its own institutions, and its own policy, and the rights and interests of its own citizens."

**In the absence of statutory provisions to the contrary,** it is generally held that the right or other interest of a widow, child, or other person to a share of the movables of a decedent in preference to a legatee, is determined by the state in which the decedent died domiciled. Sec. 301, **Restatement of the Law—Conflict of Laws;** 11 Am. Jur., 379; **9 O. Jur. (2d), 814;** In re: Sahadi's Estate, 125 N. Y. S. (2d), 204; In re: Slade's Estate, 276 N. Y. S. 956.

In the case of **In re: Estate of McCombs, 52 Abs 353,** the court, while pointing out that the rights of a relict in the state of her deceased consort in an estate consisting of personalty are determined by the law of the decedent's domicile, held that "the dominion of a state over personal property within its border is complete, and its right to regulate its transfer and subject it to process and execution in its own way and by its own laws is unquestioned; and only so far as the comity of that state allows can such property be affected by the law of any other state."

In a case originating in Minnesota, Marie M. Owsley died testate on December 10, 1910, domiciled in Virginia. Her will was admitted to probate in Virginia, and ancillary letters were issued by the Probate Court of St. Louis County, Minnesota (where she owned personal and real property) on February 11, 1911. Her surviving spouse petitioned the Minnesota court to take against the will and under the law of Minnesota. He also filed a similar motion in the Virginia court. The court held that, under the statutes of Minnesota, "no reason is to be found, either in our statutes or our public policies, why the general rule that no pre-

sumption of exclusion of non-residence will be indulged where the terms of the statute are general; and hence, the surviving spouse of a non-resident testator may, though also a non-resident, renounce the will and claim as statutory heir." In re. Owsley's Estate, 122 Minn. Rep., 190, 142 N. W. 129.

In a Vermont case, George H. Holden died testate on June 17, 1937, domiciled in Florida. His estate, consisting of personal property, was located in Burlington, Vermont. Letters testamentary were taken out in Vermont.

The court pointed out that, generally speaking, a will should be submitted, in the first instance, to the forum of the domicile of the testator, but that this general rule is subject to legislative and judicial ascertainment of the forum where property of a decedent is located. The law of Vermont provided that "if a person resided out of the state at the time of his death, his will shall be allowed and recorded and letters testamentary or of administration shall be granted in the Probate Court of any district in which he had estate." The court held that "every state has plenary power with respect to the administration and disposition of estates of deceased persons as to all property of such persons found within its jurisdiction." The court concluded that letters were properly issued in Vermont under the aforementioned section of Vermont law. In re: Holden's Estate, 110 Vt. Rep. 60, 1 Atl. Rep. (2d), 721.

In the case of Bolton et al. v. Barnett et al., 131 Miss., 802, 95 So. 721, the court considered a case in which the facts were very similar to those in the instant case. The testatrix, Bertha Bolton, was domiciled in Tennesse at the time of her death. She died possessed of both personal and real estate located in Prentiss County, Mississippi, where her will was admitted to probate. There was no administration of decedent's estate in Tennessee.

The Mississippi code provided that "authenticated copies of wills, proven according to the laws of any of the states - - -, may be admitted to probate in the proper court, or the original will may be proven and admitted to record here; - - -."

The surviving spouse elected to take against the will and under the law. A surviving spouse had no such right under the laws of Tennessee. It was contended that the husband had the right of election as to the real estate where the lex rei sitae governed, but not as to the personal property because the law of the domicile of the testatrix governed, and under the law of Tennessee, the husband, upon renouncing the will, took no part of the personal estate. The court pointed out that the right of renunciation is an incident to the jurisdiction of the tribunal which has the exclusive right to admit a will to probate, and proceeds from the jurisdiction over the matter of probate, and recognized the general rule that, when there is an original administration where the testator was domiciled, and an ancillary administration in another state where personal property is found, there cannot, and should not, be a right of election in the latter jurisdiction. The foundation stone of this rule, the court pointed out, is that this is but an ancillary administration, and that the court, with reference to the personal property,

will enforce by comity the law of the domicile of the testator. The court further pointed out, however, that, because of the Mississippi law which permits the original probate of a foreign will in Mississippi, such a probate and administration is original and in no way ancillary to the probate at the domicile of the testatrix.

The court concluded that, under Mississippi law, the Mississippi court had jurisdiction not only to admit the will to probate in the first instance, but also the right of renunciation pertained to that tribunal. The court, on page 726, stated that "we neither look to the state of the domicile of the testator for the power to renounce nor to the share to be taken upon the renouncing of the will either of the real estate or the personal estate situated here, but look to our own laws for both because of the original probate of the will here. Under our law, the husband has the right to renounce the will. This statute does not give the right of renunciation to only citizens of this state, but gives it to any husband or wife upon the probate of the will of the deceased."

The court, in conclusion, laid down the following principles of law:

"Where a testator living in a sister state owns real and personal property situated in Mississippi, the original will devising and bequeathing this property may be probated in the first instance in the county in this state where the property is situated.

"In this state the administration of the estate of a deceased person, no matter where his domicile was, is independent of all other administrations, and is to be conducted in all respects as if the decedent had been a citizen of this state when he died.

"Under §3374, Hemingway's Code (§5086, Code 1906), a husband has the right to renounce the will of his wife and take a child's part of the estate, both real and personal, though the domicile of the testatrix was in a foreign state, under which law the right of renunciation is not given the husband.

"Since all administrations in Mississippi are now original, and not ancillary, the right of the husband, upon renouncing the will of the wife, to take a child's part of both the real and personal property is governed solely by the law of this state, and not by the law of the domicile of the testatrix at the time of her death - - -."

The contra was held in Slaughter et al. v. Garland, 40 Miss. Rep. 172, before the legislature passed legislation permitting an original administration of a testator's estate when the testator died domiciled in another state possessed of property in Mississippi.

In In re: Estate of Mitchell v. Carter, Admx., 97 Oh Ap 443, Roland Mitchell, a resident of Florida, died in that state, possessed of personal and real property located in Lorain County, Ohio. Gladys Mitchell, the surviving spouse, also resided in Florida. Ancillary administration of decedent's estate was conducted in Ohio, while domiciliary administration was being conducted in Florida.

The question arose as to whether or not an allowance for property exempt from administration, as provided for under §10509-54 GC (§2115.13 R. C.) must be set off to a non-resident surviving spouse in the local estate of a non-resident decedent.

Said section provides that "when a person dies leaving a surviving spouse, or a minor child or children" certain property (the value of which does not exceed $2500) shall not be deemed assets of the estate and set off for the benefit of the surviving spouse and children.

The court held that the allowance for property exempt from administration, as provided in said §10509-54 GC (now §2115.13 R. C.), must be set off to a non-resident surviving spouse in the local estate of a non-resident decedent because the statute does not read that "when a resident of the state of Ohio dies leaving a surviving spouse residing in the state of Ohio" but reads "when a person dies leaving a surviving spouse" —any person dies leaving any surviving spouse, the property exempt from administration shall be given to such surviving spouse.

The court reasoned that, as held in State v. Stevens, 161 Oh St 432, 119 N. E. (2d) 616, "in the construction of a legislative enactment, the question is not what did the General Assembly intend to enact but what was the meaning of that which it did enact."

Ohio, like its sister states, has adopted various procedures for the administration of estates of non-resident decedents who die possessed of property located in Ohio. These procedures are designed to cover situations in which non-residents die testate and intestate and when domiciliary proceedings have and have not been instituted. When letters of administration or letters testamentary have been granted in another state, or in any foreign country, and when no ancillary administration proceedings have been had in Ohio; a non-resident executor or administrator may prosecute proceedings in Ohio to bar creditors' claims. Sec. 2129.02 R. C.

When a non-resident decedent leaves property in Ohio, ancillary proceedings may be had upon application of any interested person in any county of Ohio in which is located property of the decedent, or in which a debtor of such decedent resides. Sec. 2129.04 R. C.

Authenticated copies of wills, executed and proved according to the laws of any state or territory of the United States, relative to property in Ohio, may be admitted to record in the probate court of a county where a part of such property is situated. Sec. 2129.05 R. C.

Under §2129.07 R. C., an authenticated copy of a will executed, proved, and allowed in a country other than the United States and territories thereof can be allowed, filed, and recorded in the county in Ohio in which there is any estate upon which the will may operate, and such will and the probate and record thereof then shall have the same effect as if the will originally had been proved and allowed in this state. When such copy has been filed and recorded, and when no ancillary proceedings have been had or are being had in Ohio, the Ohio law relating to election shall be the same as in the case of resident decedents, except that such election shall be made not later than six months after the record of such copy.

The foregoing proceedings are dependent upon original domiciliary proceedings in another state or country and are ancillary to said original proceedings. The Ohio law provides that if no domiciliary administration has been commenced, the ancillary administrator shall proceed with

the administration in Ohio as though the decedent had been a resident of Ohio at the time of his death. Sec. 2129.11 R. C.

As hereinbefore mentioned, §2107.11 R. C., provides that a will can be admitted to probate not only in the county in which the testator was domiciled at the time of his death, but also in any county of this state where any real or personal property of such testator is located if, at the time of his death, he was not domiciled in this state, and provided that such will has not previously been admitted to probate in this state or in the state of such testator's domicile.

By the terms of §2113.01 R. C., "if the will of any person is admitted to probate in this state, letters testamentary - - - shall be granted by the probate court in which such will was admitted to probate."

Sec. 2107.39 R. C., provides that "after the probate of a will and filing of the inventory, appraisement, and schedule of debts, the probate court on the motion of the executor or administrator, or on its own motion, forthwith shall issue a citation to the surviving spouse - - - to elect whether to take under the will or under §2105.06 R. C.," the statute of Descent and Distribution.

The legislature has not established any different procedure for the administration of the real or personal property of a testator located in Ohio when the testator at the time of his death was not domiciled in Ohio and his will has not previously been admitted to probate in this state or in the state of such testator's domicile, under the provisions of §2107.11 R. C., than it has established for the administration of an estate of a testator who was domiciled in Ohio at the time of his death.

Under the provisions of §2107.39 R. C., the surviving spouse—not only the surviving spouse of a testator who was domiciled in Ohio at the time of his death, but also the surviving spouse of a testator who was not domiciled in, but owned property in, Ohio, and whose will has not previously been admitted to probate in any other county of Ohio or elsewhere—has the right, under §2107.39 R. C., to elect whether to take under his deceased spouse's will or under the statute of descent and distribution.

A review of the aforementioned Ohio statutes and a study of the cited authorities lead us to the conclusion that the legislature of Ohio intends to extend to a surviving spouse, wherever domiciled, the right to elect whether to take under the will of his deceased spouse or to take under the Ohio statute of descent and distribution that portion of the decedent's real or personal property located in Ohio when (Ohio) letters testamentary have been issued under the will of a deceased spouse who at the time of her death was not domiciled in Ohio and when such will has not previously been admitted to probate in any other county of Ohio or in the state of such testatrix's domicile.

The testatrix (Helen F. Gould), at the time of her death, was not domiciled in Ohio; her will has not been admitted to probate in any other county in Ohio, or elsewhere; she died possessed of personal property located in Hamilton County, Ohio; her will has been originally admitted to probate in Hamilton County; and, under these circumstances, §2107.39 R. C., gives her surviving spouse the right to elect

whether to take under her will or under the law. Accordingly, the executor's and trustee's motion to have the surviving spouse's election stricken from the record will be overruled.