JACOB CARROLL *v.* H. C. McPIKE, ADMINISTRATOR.

1. ADMINISTRATOR. *Intestate domiciled in another State. Liability of Mississippi administrator for foreign debts.*
   The Mississippi administrator of a decedent, who was a citizen of Missouri, where his estate is being administered, may, under our statute, be sued at law in the courts of this State for a debt of his intestate, though the creditor is now, and was at the time the debt was contracted, a citizen of Texas.

2. SUPREME COURT. *Practice on reversing decision of judge.*
   Where a case is tried by the circuit judge in lieu of a jury, and the record shows he decided for the defendant on a question of the plaintiff's right to sue, the merits not being considered, this court, on reversing the judgment, will remand the case for a new trial, although the evidence is all here in the bill of exceptions.

ERROR to the Circuit Court of Hinds County.

Hon. GEORGE F. BROWN, Judge.

The trial was by the circuit judge, in lieu of a jury. The bill of exceptions taken by the plaintiff sets out all the evidence. The judgment of the lower court, in the record, shows that the case was decided by the circuit judge solely on the preliminary question of the plaintiff's right to sue, without reference to the merits. The facts on which that question arises are stated in the opinion of the court.

*Shelton & Shelton*, for the plaintiff in error, argued the case orally, and filed an elaborate written argument, making the following points : —

1. This is an action of *assumpsit*, to which there is filed a plea of *non assumpsit* and notice of payment. The issue is, Did the intestate promise to pay, and, if so, has he or the defendant paid ? The Circuit Court refused to decide this issue, but decided that the plaintiff, a Texan, could not sue in Mississippi, but must sue in Missouri, and dismissed the suit. The plea presented matter in bar. The court decided matter of abatement. The latter was waived by the plea in bar. 43 Miss. 39 ; 12 S. & M. 447, 657 ; 4 S. & M. 538, 549, 559 ; Stephens on Pleading, 430.

2. Can a creditor, not a resident of Mississippi, sue in assumpsit in this State an administrator who became administrator first in another State and afterwards in this ?

If the plaintiff was a *Mississippi creditor*, our courts would unquestionably have jurisdiction, and this action be maintained, whether the administration here be in chief or ancillary. 33 Miss. 572 ; 44 Miss. 37, 45. Hence the sole objection to the maintenance of this cause is, that the plaintiff is a Texan. Such a discrimination against citizens of another State is in violation of our Mississippi Constitution. Art. 1, §§ 28, 30 ; art. 6, § 14 ; also Code 1871, § 519. It would also come in conflict with § 2 of art. 4 of the Federal Constitution, and the construction of that section by the courts. 3 Pick. 145 ; 4 Wash. 380 ; 11 N. H. 95 ; 12 Wall. 430 ; 2 Story on Const. § 1806, note 4.

It is adversely contended that courtesy to Missouri defeats all this. Can courtesy defeat an exclusive jurisdiction ? Can it defeat the Mississippi Constitution ? Can it defeat the Federal Constitution ? The court below decided that, if the plaintiff had been of Mississippi, the courts would be open to him ; being of Texas, they are not. If of Mississippi, justice would have been done ; but, being of Texas, it will not. If of Mississippi, he would not be debarred of his action ; but, being of Texas, he is. If of Mississippi, the Federal Constitution guarantees him the right to sue here ; but, being of Texas, it does not. The constitutions and laws make no such invidious discriminations between the citizens of the several States.

Courtesy applies, if at all, to probate proceeding, 9 S. & M. 274; 21 Conn. 583; and then only where the object of removal is distribution, 6 Vt. 382; 44 Miss. 46; 38 Miss. 62; and it is a matter of judicial discretion whether it will order the removal at all. Apart from § 1950, Code 1871, the *lex domicilii* controls the distribution of personalty, and the courts of the *rei situs* will remit or administer, according to the law of the domicile, at their discretion. 38 Miss. 62; 44 Miss. 46; 2 Kent Com. 433.

The following cases relied upon by the appellee are reviewed and commented on at length: *Boston* v. *Boylton*, 2 Mass. 384; *Dawes* v. *Boylston*, 9 Mass. 337; *Gaylord* v. *Stevens*, 11 Mass. 262; *Dawes* v. *Head*, 3 Pick. 128; 5 Vt. 333; 6 Vt. 373; 7 Vt. 177; 17 Vt. 319.

The following cases are cited and relied upon, and commented upon: *Jones* v. *Jones*, 6 Leigh (Va.), 299; 11 Leigh (Va.), 1; 4 How. (U. S.) 467; 1 Mason, 394; *Goodall* v. *Marshall*, 11 N. H. 88; 14 N. H. 120; 44 Ill. 202; 4 Ohio, 68.

This doctrine of courtesy cannot be successfully invoked in a case like this. But however it may be elsewhere, our statutes distinctly abrogate it. The Mississippi statutes recognize no such thing as *ancillary* administration. The estates of citizens and non-residents are put on precisely the same footing. §§ 1088–1189, Code 1871. But § 1950, Code of 1871, settles the question in this State. It provides that "all personal property situated in this State shall descend and be distributed according to the laws of this State regulating the descent and distribution of such property, . . . notwithstanding the domicile of the deceased may have been in another State, and whether the heirs or persons entitled to distribution be in this State or not." This statute cannot possibly be enforced if the Mississippi assets be sent to Missouri. There they would be distributed according to Missouri law, and our statute would be defeated. 40 Miss. 178.

Under our laws the lands of a decedent are liable for his debts, and, when sold, the fund is assets in the hands of the administrator. By courtesy, as adversely invoked, that fund must be sent abroad to be administered, when perhaps by their laws the land is not chargeable with debts. Furthermore, there

the administrator would not be responsible for the proceeds of the land sold here.   Story Conflict of Laws, 523 ;  2 Wend. 471 ;  6 Pick. 481 ;  7 N. H. 504.   Hence the non-resident creditor would have no remedy as to Mississippi effects.   We have not argued the case on the facts, because it is not in that attitude before this court.   If it were, the evidence shows conclusively that the plaintiff is entitled to recover.

*Harris & George*, for the defendant in error, contended that an ancillary administrator is not liable to be sued at law for the debts of his intestate, where the creditor does not reside in the ancillary jurisdiction ; citing 2 Redfield on Wills, c. 1, § 2, p. 8 ; Story Conflict of Laws, § 513 ; Wharton Int. Law, § 607 ; *Doolittle* v. *Lewis*, 7 Johns. Ch. 49 ; *Mackey* v. *Cox*, 18 How. 105 ; *Anderson* v. *Gregg*, 44 Miss. 170–184 ; *Satterwhite* v. *Littlefield*, 13 S. & M. 304 ; Code 1871, § 1189 ; *Miller's Estate*, 3 Rawle, 312 ; *Dawes* v. *Head*, 3 Pick. 138 ; 2 Kent Com. 431, 434 and note ; *Riley* v. *Mosely*, 44 Miss. 43 ; *Lovelady* v. *Davis*, 33 Miss. 577 ; *Harvey* v. *Richard*, 1 Mason, 380.

The farthest that any court has gone, except in New Hampshire, so far as our researches reach, is, that it is within the *discretion* of the court *granting letters of ancillary administration* to remit the surplus after satisfying domestic claimants, or to distribute it there.   But these courts hold that, until this discretion has been exercised, and the ancillary administrator directed to pay, or distribute, he is in no default for not paying.   See *Mackey* v. *Coxe*, 18 How. (U. S.) 100; *Dent's Appeal*, 22 Penn. St. 514.

In the suit at bar, no application is made to the Chancery Court for the exercise of its discretion, but the suit is at law upon an alleged default of the administrator in not paying the debt.

This question is so fully discussed in some Vermont cases, that I will present one or two, with liberal extracts from the opinion of the court.   *Hunt* v. *Fay*, 7 Vt. 170.   *Churchill* v. *Boyden*, 17 Vt. 319, was an action at law against an ancillary administrator, and the defendant pleaded that the plaintiff was not a citizen, but a resident, of the State of intestate's domicile.   Demurrer to the plea.   The court said, " The only

question here is whether the creditors of an estate, when the principal administration is out of this State, and an administration of estate within this State has been granted here, are all alike entitled to have their demands allowed by the commissioners appointed here ; or whether the commission extends only to resident creditors. We think it may be considered well settled in this State that it is only the latter class of creditors who are entitled to have their claims allowed here ; " citing *Vaughn* v. *Barrett*, 5 Vt. 333 ; *Hunt* v. *Fay*, 7 Vt. 170 ; and *Porter's Heirs* v. *Heydock*, 6 Vt. 374. I am aware that, upon general principles of moral equity, there may be much said against the rule of allowance. But the law seems to be so settled in most of those countries where the common law of England prevails, and in many others. It has never been questioned that the Court of Probate, where the ancillary administration is, will take no notice of foreign creditors, and not usually of foreign legatees or distributees ; citing *Dawes* v. *Head*, 3 Pick. 128 ; *Davis* v. *Esty*, 8 Pick. 475 ; *Mothland* v. *Wiseman*, 3 Penn. 185 ; *Miller's Estate*, 3 Rawle, 317 ; Story Conflict of Laws, 334 ; 2 Kent Com. 434, note. Some question has been made whether resident creditors shall be fully paid, if the funds here are sufficient, although not sufficient in all to pay all the creditors. It has been questioned how far the courts of the subsidiary administration will proceed to distribute the funds found there among the (heirs) legatees. The prevailing practice upon the latter point is, I apprehend, as above stated, not to decree any such distribution, but to remit the funds to the principal administrator. But it is admitted that even here there is a discretion in the courts where the funds are found, and, if they do remit them, it is merely courtesy ; citing 6 Vt. 374 ; *Richards* v. *Dutch*, 8 Mass. 506 ; *Dawes* v. *Boylston*, 9 Mass. 337 ; *Stevens* v. *Gaylord*, 11 Mass. 257. Story Conflict of Laws, §§ 512, 513.

In *Stevens* v. *Gaylord*, 11 Mass. 256, G., who was appointed administrator of T. in Connecticut, where he lived at the time, was a debtor of T., and returned the debt in his inventory. G. afterwards came to Massachusetts, and was there sued by the administrator in that State for the debt. He relied on his liability to account in Connecticut as a defence. The court

upheld his plea, and, among other reasons, gave the following : " Another reason why this money should be accounted for in Connecticut is, that all the effects of the deceased *are liable in the first instance to the creditors there.* No principle of comity requires of the government to lend their aid *in collecting the assets of the deceased and to send those effects out of their country,* whilst any of their citizens have just and legal claims upon the fund. The debt, then, was assets liable to the claims of all creditors, citizens of Connecticut, and they ought not to be deprived of this advantage, merely because the debtor himself is appointed administrator."

Wharton (Conflict of Laws, § 619) says : " But in such cases, in view of the delicacy of the issues and complication of the trust, it is important that the ancillary administrator should make no payments except under the decree of the court by which he is appointed. To such court he is exclusively bound to account. Nor are any assets to be transmitted to the administrator of the domicile when there are *claimants within the jurisdiction of the ancillary administrator.*" *Parker's Appeal,* 61 Penn. 478 ; *Mackey* v. *Coxe,* 18 How. 100 ; *Porter's Heirs,* v. *Heydock,* 6 Vt. 374.

To avoid circuity, the court having jurisdiction over the ancillary administration may order the residuum (instead of being transmitted to the domiciliary administrator for final administration) to be paid directly to the heirs or legatees. *Fay* v. *Horne,* 3 Mich. 309 ; *Mickling* v. *Campbell,* 24 Beav. 100 ; *Jones* v. *Mitchell,* 4 Dev. 141 ; *Carmichael* v. *Ray,* 5 Ired. 365.

An ancillary administrator must pay the debts there in full, if estate is insolvent. *Cook* v. *Grayson,* 2 Dev. 286 ; *Pardee* v. *Bingham,* L. R. 6 Eq. 485.

But there is a still stronger reason why foreign creditors should not be allowed to collect their debts here, furnished by our statute. This statute is as follows : —

§ 1950. " All personal property situated in this State shall descend and be distributed according to the laws of this State regulating the descent and distribution of such property, regardless of all marital rights which may have accrued in other States, and notwithstanding the domicile of the deceased may have been in another State, and whether the heirs or

persons entitled to distribution be in this State or not; and the widow of such deceased person shall take her share in the personal estate, according to the laws of this State."

This is found in the chapter of the Code in relation to descent and distribution, and has reference solely to the disposition of a decedent's property among his heirs, distributees, legatees, devisees, or those claiming from the bounty of the testator. It makes an innovation of the common-law rule, which directed the descent and distribution of personalty according to the laws of the testator's domicile. The legislature repealed the rule of comity to this extent, that as to property here the State would determine for itself who were to be the successors of all property, real and personal, within its limits. The statute puts the succession to personalty exactly on the same footing as realty. The statute effects a great change on this subject. Manifestly, the legislature intended, as to the property situated here, to determine and fix who are to succeed to it, so far as heirs and distributees are concerned; but they went no farther. They made no provision as to creditors. And now it is clear that this policy of the legislature will be wholly frustrated, if all the creditors of the decedent domiciled in another country are allowed to resort here in the first instance and consume the whole or a part of the estate here, to the exoneration of the estate in the domestic forum. Not only all, or a great part, of the personalty, but also all the realty situated here, may be thus consumed, the property in the domicile left untouched, and in this way the property of the decedent, left after paying his debts, be made to descend wholly according to the law of his domicile.

2. And now we claim, that if the court should disagree with the court below, and should hold that the judgment was wrong on the point decided by the court, or wrong for the reason given by the court, it is right on the evidence; and this court has no right to remand the cause.

A jury trial was waived; the case was, by consent, tried before the judge; he was made, just like the chancellor, the judge of the law and the facts. The evidence is all before the court, and we insist that, just like on an appeal from chancery, this court must decide the cause finally, unless it be necessary

under the statute to remand the cause to ascertain some unknown fact necessary to be inquired into. Code, § 413.

The evidence is all before the court here, as it was before the circuit judge. Manifestly, if the circuit judge had passed on both issues, as it was his duty to do, and had found both for defendant, as he necessarily would, from the evidence (for the defence was made out completely), the plaintiff in error would have had the right to have this court review the evidence, and reverse if it were insufficient. So, if the court had found on the evidence that there was no debt, we would have had a right to have asked an affirmance, though this court should be of opinion that the ancillary administrator could be sued. The defendant claimed the court should pass on all. The plaintiff objected, and the court sustained his objection; and so, though rendering judgment in one form, confined his reasons therefor to one single point, when there existed two good reasons for it.

*James Z. George*, on the same side, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

Abram McPike, a citizen of Missouri, died, leaving real and personal property in this State. Letters of administration on his estate were granted in this State and in Missouri. Jacob Carroll, a citizen of Texas, and claiming to be a creditor of the decedent, instituted his action in the Circuit Court of Hinds County, to enforce this claim against H. C. McPike, the Mississippi administrator of the estate of said decedent. The Circuit Court denied the right of the plaintiff to maintain his action, because he was a citizen of Texas when his claim arose, and continued so to be; and the decedent was domiciled in Missouri, where administration of his estate had been granted, and therefore the plaintiff must sue in the courts of the domicile of the decedent. The correctness of this view is the chief question in the case, now here on writ of error.

The general doctrine, as declared by Story, in Conflict of Laws, § 518, is, that an administration in any other country than that of the domicile of the deceased is treated as in its nature ancillary merely to that in the country of the domicile, because " the final distribution of his effects among his heirs

or distributees is to be decided by the law of his domicile." This reason wholly fails in its application to this State, and the doctrine built on it is entirely subverted by our statute, declaring that personal property situated in this State shall descend and be distributed according to the laws of this State, notwithstanding the domicile of deceased may have been in another State. Code, § 1950. In this State administration of the effects here of a deceased person, no matter where his domicile was, is independent of all other administrations, and to be conducted in all respects as if the decedent had been a citizen of this State when he died. Debts are to be paid according to the assets, and any surplus is to be distributed here. All creditors, no matter where residing, nor where the debts were contracted, are entitled to prove their claims here, and proceed in our courts to enforce them, and to share in the assets here. There may be inconveniences, and sometimes hardships, resulting from this doctrine; but it plainly results from our system, as established by statutes, and we cannot shrink from declaring it, whatever may be the consequence. Whether, in case of payment of all debts proved against the estate here, an application to the proper Chancery Court by the administrator of the decedent in the State of his domicile, representing the necessity for the surplus of assets here to be used in the State of the domicile of the decedent for the payment of debts proved there, it would be proper to grant such application, and order the transmission of such surplus to the administration of the domicile, is a question not now presented or decided.

We have looked to the facts of the case, and think they should have been passed upon, and should now be submitted to a jury.

*Judgment reversed, and cause remanded for a new trial.*