TEMPLE *v.* FIRST NAT. BANK OF MERIDIAN *et al.*

(In Banc. May 26, 1947.)

[30 So. (2d) 605. No. 36448.]

Gillespie, Minniece & Nettles and W. L. Clayton, all of Meridian, for appellant.

Snow & Covington, of Meridian, for appellees.

Argued orally by **R. G. Gillespie**, for appellant.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

William Foster Temple on the 22nd day of September 1944 was a widower, without living parents, children, brothers or sisters, and was residing in Lauderdale County, Mississippi. Without having remarried, he departed this life testate on the 7th day of January, 1945. His will was holographic, although meticulously he had it attested by four witnesses. His heirs-at-law are the children, and descendants of the deceased children, of his deceased brothers and sisters, some of whom are also legatees; and to some of whom he neither devised nor bequeathed anything, so that at his death they became distributees under the law. The suit now before us grew out of this situation—a contest between legatees and distributees.

The following pertinent quotations from the will of Mr. Temple demonstrate the nature and status of the property of which he died seized and possessed, and his desires and purposes with reference thereto:

*First, I desire Federal and State Inheritance Tax be paid. My funeral expenses, Executor's and Co-Executor's fees and other just debts be paid, after which make distribution to Beneficiaries of my Estate as follows:*

''First, I give and bequeath to my niece, Mrs. Estelle Temple McDonald Two Thousand and One Hundred ($2,100) Dollars Center Ridge Newton County Miss.

School Bonds and Three Thousand Eight Hundred ($3,800) Dollars of Ponta Lauderdale County Miss. School Bonds.'' This single bequest to his niece, Mrs. McDonald, is cited as typical of thirty odd like legacies described and bequeathed to as many legatees, and it is not necessary to recite the others.

The will also contains this specific direction for the payment of his debts: ''I have reserved Seven Thousand Dollars of U. S. A. Defense Bonds of which *no disposition* has been made and Sixteen Thousand Dollars of Hancock County, Miss. bonds, some other bonds, and some cash, which Executor and Co-Executor may sell and pay the expenses of executing this trust, including Federal, State Inheritance Tax, Executor's, Co-Executor's and other necessary, and Funeral Expenses, *to a complete and final settlement of all matters.*'' The total debts of the estate, plus taxes, court costs and incidental expenses, amounted to $36,429.15, while the total value of the personal property set aside in this clause of the will, for the payment of the items therein enumerated, was much less than the above amount.

With great care, Mr. Temple undertook to anticipate contingencies that might develop whereby some adjustments could become necessary. With this in view evidently he included the following clause in his last will and testament: ''I further direct and authorize said Executor's and Co-Executor that in the event conditions arise *so that it would become necessary and for the best interest of my Estate* to sell other Bonds than those enumerated for the same purpose as stated in selling those Bonds, *then deliver to Legatees in like amount in lieu of those substituted. However, do not make this change unless it is absolutely necessary to do so.*''

As indicative of his purposefulness, and the emphasis he placed upon the execution of his will as expressive of his desires, Mr. Temple then wrote: ''My Will and desires are herein expressed and I want them respected and carried out. *If it becomes necessary* to sell any

Bonds that have been bequeathed for the purpose of paying Federal or State Inheritance, or of other legal tax, do not sell all of any specific allotment, but deduct portions of other allotments so that deductions would not be made from a small number of beneficiaries. To make it clear if there not be a sufficient amount as I have set aside then deduct the best you can in your judgment from other Beneficiaries to pay off said matters.''

''It is my aim and purpose to buy other bonds than here enumerated from time to time and likely some of the bonds I now own will mature and be paid off, so I direct that bonds so paid may be replaced with other bonds purchased.''

At the time of his death, the testator also owned certain household furniture and other personal property, and also a town residence and lot. He made no disposition of this property expressly in his will, which made such property descendible. So, it having become manifest, in the course of the administration of his estate, that the property set aside by him for that purpose was insufficient to pay probated claims, taxes, court costs and other authorized expenses, the executors sought from the Chancery Court of Lauderdale County ''and order authorizing sale of personal and real property,'' filing their petition to that end, on which process was had. Certain distributees contested this application, saying that they ''object to the sale of the real estate belonging to the testator or any property real or personal not specifically devised or set apart for the payment of the debts and expenses of the administration.'' They urged that the chancery court adjudicate the heirs-at-law to be the owners of all such property not specifically bequeathed or devised or set aside for the payment of the enumerated debts, taxes and expenses. In other words, they contended that the personal estate should first be expended for debts and charges before any sale of the real estate be had for that purpose.

The chancellor defined the issue between the legatees and devisees, thus raised, as follows: "The question here is from what property the debts, funeral expenses, cost of administration, taxes, that are not fully paid out of the bonds that he specifically mentioned and reserved for that purpose, and some more personal property not bequeathed, are to be paid. Would you get the difference or balance due after selling this property specifically devoted to that purpose from a sale of his home not devised, or would you prorate the balance among the people to whom he bequeathed certain bonds?"

This question he answered by holding that Mr. Temple "wanted these people he named in his will, for reasons known to him, to get what he stated in the will. That seems to have been uppermost in his mind. . . . I think that all of this personal property that is not left to any particular person should first be sold to pay these debts and expenses, and if that is not enough then sell the land." He also held that the testator meant that recourse upon the bonds, bequeathed to the named legatees, be had only if necessary as a last resort.

We think the construction put upon this will by the chancellor is correct, and that the passages, in the quotations which we have italicized, supra, and a careful reading of the whole testament, demonstrate that Mr. Temple had the dominant, dual purpose of bequeathing to the named heirs the personal property described in his will with such meticulous care, and of protecting same against abatement, and the payment of all his debts, if possible, in such a way as would prevent recourse to the bequeathed personalty to the named heirs. He directed that none of these bequests were to be abated unless necessary, which meant, of course, in connection with his purpose to have his debts paid, that all other assets of his estate be first exhausted. It is true that the will is not free from awkwardness of expression, and that is why its construction is necessary, but we have held that any mere indistinctness in the phraseology of a will,

or awkwardness of expression, must be so dealt with, if reasonably possible, as to effectuate, and not overthrow, the dominant intent of the testator. Davenport et al. v. Collins et al., 96 Miss. 716, 51 So. 449.

As an aid in ascertaining the intention of the testator here, we must not lose sight of certain personal property and real estate not devised expressly by him, and as shown above, the distributees are seeking this property free of debt, and to cast the burden of debt and costs upon the personalty bequeathed to the legatees. This is on the theory that Section 539, Code 1942, directs that all of those demands against the estate shall be paid out of the personal property, and that the lands of the testator shall also stand chargeable for such matters only over and above what the personal estate may be insufficient to pay. The answer of the legatees is that these legacies were exonerated from the payment of debts and expenses by Mr. Temple's directions in his will, unless their invasion and abatement be ultimately rendered necessary. See Benton v. Friar, 171 Miss. 361, 157 So. 356. We have interpreted the statute above cited in Gidden et al. v. Gidden, 176 Miss. 98, 167 So. 785, wherein we held that personalty descends to personal representatives for payment of debts and legacies, and realty goes to heirs and devisees and is not subject to debts until personalty is exhausted, unless the will provides otherwise. In our judgment, it was the positive intention of Mr. Temple that the described legacies to the named legatees be available to them without abatement unless it became necessary to encroach upon them for the payment of the debts and charges, which perforce authorized resort to the real estate for such purposes, thereby freeing the bequeathed personal property from abatement, and thus assuring its delivery to the legatees. The testator stated in positive language his wishes as to the one, although he stated no wish as to the other. It is a logical and fair interpretation of his whole will, we think, that the descendible

property be exhausted in the payment of the debts and costs before encroaching upon the legacies.

There is a great deal of discussion in the briefs as to the character of the legacies, that is, whether they are specific, general or demonstrative. In our judgment, it makes no difference in the solution of the issue before us because, in further aid of our construction of this will, we adopt and are permitted to rely upon the rule by all of the authorities as stated in 4 Page on Wills, Lifetime Edition, Section 1496, p. 323, that: "If there is no residuary clause, property not disposed of by will is first applied to debts and the like." In Clark's Summary of American Law (1947) pp. 215, 216, it is stated: "If there not enough assets to pay the debts and legacies and the will does not specify any order of abatement to be followed in such a contingency, the first to be abated is the property, if any, not covered by the will."

In 69 C. J., Sec. 2570, p. 1226, it is said that in the absence of directions in the will to the contrary "property undisposed of by the will must first be resorted to for the payment of testator's debts." And in case Note 71, one reason for the rule is stated to be: "Property not disposed of by a will must first be resorted to for the payment of demands against the estate because the law endeavors to carry out the intent of the testator as far as possible, and therefore property not disposed of by the will should be so applied as to render it certain that the dispositions actually made by the testator will be effective." See also Atkinson on Wills, Hornbook Series, Section 250, p. 707, defining "abatement" as "the reduction of legacies on account of the insufficiency of the estate to pay testator's debts and other legacies. Intestate property should be first applied for these purposes." See also Earle et al. v. Coberly et al., 65 W. Va. 163, 166, 64 S. E. 628, 17 Ann. Cas. 479, and the authorities there cited. Mr. Page in his work on wills, as we have noted supra, refers to the absence of residuary clauses as

bringing into play the rule here invoked. There is no residuary clause in the will involved in the instant case.

Appellants rely upon the case of Gift et al. v. Love, Supt. of Banks, 164 Miss. 442, 144 So. 562, 567, 86 A. L. R. 63, in which case there was both personal and real property undisposed of by will. We do not believe that case presents any refutation of our conclusion here. In it, we said: "Under our statute the lands, as well as the personalty, of the deceased are liable to the payment of his debts. The only difference is that the latter is to be first exhausted. It is true the legal title to lands descends to the heirs, who are entitled to enjoy them until the *contingency* arises when they may be required to pay debts, but the heirs hold them subject to the charge of the ancestor's debts." (Italics ours.) In the case at bar, under the provisions of the will of Mr. Temple, since the property set aside by him for the express purpose of paying his debts was insufficient, and since the sale of the descendible real estate will render it unnecessary to have recourse to the legacies, at least until after that is done, the contingency is present. We have spoken at least twice upon this subject. In Gordon et al. v. James et al., 86 Miss. 719, 39 So. 18, 20, 1 L. R. A. (N. S.) 461, Judge Truly, writing for the Court, said: "It is contended by counsel for appellants that, inasmuch as the widow in this case renounced the provision made for her by the will of her husband, by operation of law her share of the property descends to her as heir, and coupled with all of the burdens imposed by law as if her husband had died intestate as to this portion; and that the one-half of the estate as to which the decedent died intestate is first liable to all the debts of the decedent, by operation of the general principle of law which renders property undisposed of by will, and which descends to the heir in cases of partial intestacy, primarily subject to sale for the satisfaction of the debts of the decedent before any of the property which has been disposed of by the testator can be devoted to that purpose. The argument is per-

fectly sound, but the existence of the premises is erroneously assumed.''

Again in an earlier case, Judge Sharkey delivered the opinion of the Court, and in the course of it said: ''I think this question can be readily determined by an application of the rules for marshalling assets. The order adopted is, first, personal property; secondly, lands descended; and thirdly, lands devised. (Livingston v. Newkirk), 3 Johns. Ch. (N. Y.) 312, 319; (Livingston v. Livingston, 3 Johns. Ch. N. Y.), 153. This rule is entirely consistent with our statute law, and in applying it, we have only to examine the provisions in the will, and the facts set out in the petition. In the first place, there is no descended property, the whole estate being disposed of by the will. Regarding the whole estate as devised, it must be liable in the order which the law has prescribed; first, the personal property, and secondly, the lands, unless a different order of liability is produced by the character of the legacies.'' Fisk & McNiel, Executors, v. McNiel, 1 How. 535. See also Livingston v. Newkirk, 3 Johns. Ch., N. Y., 312, 319.

In the texts of treatises dealing therewith, and the discussions of this particular question by the courts, use is made of the reasoning in the practice of marshalling assets, which, although not strictly analogous, is rationally parallel in the case of estates, such as the one before us. In the marshalling of assets, compelling recourse of one creditor to the property to which he alone can look, thus leaving the other creditor to look to the property to which both could have looked, is considered the fairest solution of the situation, so in construing wills, the same reasoning is generally applied where such a condition exists, as here. Here the legatees could look only to the personal property bequeathed with such meticulous care to them, while the creditors could look both to the undevised real estate and the unbequeathed personal property. And unless it be held that the will of Mr. Temple intended for his legatees not to receive the property set

aside for them, in order to assure the undevised real estate descending to unnamed distributees, free from debts and the like, it must be construed as meaning that his legatees, by his expressed desire, receive their legacies, exonerated from liabilities of the estate, unless necessary, as a last resort, to be used in the discharge thereof, as we have already stated.

As pointed out herein, ante, it is persistently argued by appellants, however, that at common law lands descended to the heirs, and only personalty to the administrator, and that therefore land can be charged with the payment of debts only by statute, and that our statute so allowing, Section 539, Code 1942, supra, provides that: "the lands of the testator or intestate shall also stand chargeable for the debts and such expenses over and above what the personal estate may be sufficient to pay, . . ." This statute does not prohibit the testator himself from making, by his will, his own directions as to the order or priority of the application of his estate in the payment of his debts. He may charge his real property with the entire burden of the payment of his debts to the complete exoneration of his personalty, if and when the real estate is sufficient to do so, or he may apportion the burden between real and personal property. As between legatees, devisees and distributees, the will and not the statute controls. However, the statute has no bearing whatever on the rule that when the testator makes bequests of his personalty and no devise of his realty, the latter is charged with his debts to the exoneration of the bequests. The testator in his lifetime could have sold his realty and paid his debts, leaving his personalty free, so by his will he may accomplish the same purpose, as he does when he wills his personalty and leaves his realty undisposed of by the will. Lintonia Bldg. & Loan Ass'n et al. v. McRaven et al., 167 Miss. 803, 150 So. 213; Gidden v. Gidden, supra; American Law of Administration (Including Wills) by Woerner, Vol. 3, 3rd Ed., Sec. 493, p.

1721; Knotts et al. v. Bailey et al., 54 Miss. 235, 28 Am. Rep. 348; Benton v. Friar, supra.

The final decree determined that "the cash on hand, and in the Executor's possession, is insufficient to pay deceased's debts, his taxes, the expenses incident to the administration of the deceased's estate, and other obligations. The value of deceased's personal property other than that bequeathed to specific parties is insufficient when added to the cash the executors have on hand to pay his obligations above stated." It directed the sale of bonds and other personal property not bequeathed, and that, if the proceeds thereof be not sufficient, when added to the cash aforesaid, to meet the obligations of the estate, the executors sell at public auction the real estate of the deceased, and make their report thereof.

We are therefore of the opinion, as stated, that the chancellor was correct in his construction of this will, and the decree of the chancery court will be, and is, affirmed, and the cause remanded.

Affirmed and remanded.