WATSON, EXECUTOR, ETC. *v.* CAFFERY.

No. 41083          March 16, 1959          109 So. 2d 862

224

*Thos. J. Wiltz, E. C. Tonsmeire, Jr.,* Biloxi, for appellants.

*Thos. L. Wallace, Lawrence Semski,* Biloxi, for appellee.

226

Kyle, J.

This case is before us on appeal by Roy M. Watson, Executor, and Lucille M. Mortimer Wiegand and Joan Mortimer Williams, devisees, defendants in the court below, from a decree of the Chancery Court of Harrison County construing the last will and testament and codicil of Mrs. Lucille B. Gillis, deceased, and also cross-appeal of Mrs. Daphne Gillis Caffery, petitioner, from that part of the decree which confirmed the appointment of said executor.

The record shows that the testatrix, Mrs. Lucille B. Gillis, died on March 7, 1957, and that her last will and testament and codicil were duly admitted to probate on March 16, 1957, and that letters testamentary were duly issued to Roy M. Watson as Executor on the same date. Marcel A. Gillis, who was named as co-executor in said will, declined the appointment and was relieved from serving by the decree of the court. The petition for the construction of the will was filed by Mrs. Daphne Gillis Caffery, a daughter of the testatrix, on May 3, 1957; and in her petition the petitioner also asked that said executor be removed, and that an administrator be appointed. The will, dated August 9, 1955 and the codicil, dated June 29, 1956, were both wholly written, dated and subscribed by the testatrix in her own hand, and are in words and figures as follows:

"I Lucille B. Gillis, a resident citizen of Biloxi, Harrison County, Mississippi, declare this to be my last will & testament—I leave my property in Louisiana, known as Woodside Plantation, in equal division, to my three children. My son Marcell A. Gillis, my daughter Daphne Gillis Caffery and my *great-granddaughter Joan Mortimer*—To my daughter Daphne

Gillis Caffery I leave the entire contents of my home 806 W. Beach and all other personal property of which I may die possessed of to do with as she wishes—She may also occupy my home for one year after my death —It should then be sold and the proceeds, after all expenses are paid, should be divided into thirds, one third going to my grand daughter Lucile Minor Mortimer, one third to my grand daughter Joan Minor and one third to my *great grand daughter Joan Mortimer.*—

I leave one thousand dollars to my faithful housekeeper Louise Boykins—I appoint Marcel A. Gillis & Roy M. Watson my executors with siezen & without bond—

This Will is written, dated & signed by me in my home 806 W. Beach, Biloxi, Mississippi, on August 9th, 1955—

Lucille B. Gillis

*First Codicil*—I now wish my property in La. to go in equal division to my Son Marcel A. Gillis & my daughter Daphne Gillis Caffery, and the proceeds of the sale of my home 806 W. Beach Biloxi to go *one* third to my grand daughter Lucile Mortimer and *two* thirds to go to my great-grand-daughter Joan Mortimer—

Dated and signed by me in my home 806 W. Beach June 29th 1956—

Lucille B. Gillis"

The record shows that the estate of the testatrix consisted of personal property, including cash on hand, money on deposit in banks, bonds, a 1956 model Plymouth automobile, and household furniture and furnishings, of the total value of $24,354.72. The automobile was valued in the inventory filed by the executor at $1500.00, and the household furniture and furnishings were valued at $663.00. In addition to the above men-

tioned personal property, the testatrix owned real property described in the will and codicil as "my home 806 W. Beach," in the City of Biloxi, which was valued at approximately $70,000.00, and farm lands situated in the State of Louisiana, valued at approximately $12,000.00, and also mineral rights in other lands situated in Louisiana.

In her petition for construction of the will Mrs. Daphne Gillis Caffery alleged that the executor had informed her that the expenses of the administration of the estate were to be paid from the stocks and bonds belonging to the estate, which constituted a part of the personal property bequeathed to her in the will; that, if such construction were adopted for the settlement of the estate, it would have the effect of defeating the intention of the testatrix, and that, petitioner would take practically nothing under the will. The petitioner further alleged that no appraisal of the assets of the estate had been made as required by law and the order of the court, that Roy M. Watson, the Executor, had failed to furnish the petitioner a list of the personal property belonging to the estate, although she had often requested that such list be furnished; that the bond required of the executor was insufficient; and that if said Roy M. Watson should be permitted to continue to serve as executor under the will, he should be required to give bond in a sum of not less than $20,000.00. The petitioner further alleged that the said Roy M. Watson, Executor, was a nonresident of the State, and that he was holding the assets of the estate outside of the jurisdiction of the court, and for those reasons should be removed from his office as executor. The petitioner therefore asked that the said Roy M. Watson be removed as executor and that a resident of Harrison County or a trust company authorized to do business in Mississippi be appointed administrator of the estate.

The respondent, Roy M. Watson, Executor, and Joan Mortimer Williams and Lucille M. Mortimer Wiegand, devisees, in their answer, admitted that said executor had informed the petitioner that it was his belief that all expenses of the administration, as well as the debts and charges against the estate, were to be paid out of the proceeds of the bonds and other personal property belonging to the estate, which under the will were bequeathed to the petitioner. The respondent denied that it was the intention of the testratrix that all expenses of the estate, including the debts, should be paid out of the proceeds of the sale of the Mississippi real estate. The respondent averred in their answer that the provision of the will relating to the payment of "expenses" out of the proceeds of the sale of the real estate clearly related only to the expenses incidental to the sale of the real estate, and that any other construction of the provision would be a strained construction and would not carry out the true intention of the testatrix. The respondents averred that the debts and other charges against the estate should be paid out of the sale of the bonds and other personal property belonging to the estate. The respondent, Roy M. Watson, Executor, denied that any cause existed for his removal as executor. The respondent denied that no appraisal of the estate had been made as required by law and an order of the court, or that he had failed to furnish the petitioner with a list of the personal property, as alleged in the petition asking for his removal as executor. The respondent admitted, however, that he did not furnish such list immediately after receipt of the petitioner's request.

The respondents incorporated in their answer a cross-bill, in which they alleged that under the applicable law, "bequests of personal property would, in any event, abate even to the extent of complete destruction thereof prior to the charging of any real estate with the payment of any debts of costs of administration and there-

fore, no portion of the debts or expenses of administration would be chargeable against the real estate or the proceeds thereof, as contended by the petitioner." The respondents asked that the will be construed in accordance with the averments of their cross bill, and that the court decree that all debts of the estate, including taxes and expenses of administration, be charged against the general bequest of the personal property left to Mrs. Caffery, and that the legacy of Louise Boykins be charged against said general bequest of said personal property, and that the provision of the will relating to the sale of the real estate be construed to mean that the proceeds of the sale of the real estate should be charged only with the expenses incident to the sale.

Only one witness was called to testify during the hearing before the chancellor. Roy M. Watson was called to testify as an adverse witness by the petitioner. Watson testified concerning the condition of the assets of the estate, and his management of the property for the testatrix during her lifetime. He stated that he was a resident of the City of New Orleans; and that he had been employed by the testatrix to manage her business affairs for her under a general power of attorney for a period of approximately twenty years. He was questioned at length concerning his management of the esstate. Parts of his testimony will be referred to later; but it is not necessary that we undertake to summarize his testimony in this opinion.

At the conclusion of the hearing the chancellor rendered a written opinion which has been made a part of the record. The chancellor was of the opinion that, by the use of the words "do with as she wishes," the testatrix intended for Mrs. Caffery to take and have all of her personal property free of the claims of the testatrix' debts and administration expenses, including taxes; and that by the use of the words "after all expenses are paid," the testatrix intended that all expenses of the administra-

tion of her estate, including taxes, should be paid out of the proceeds of the sale of her residence property in the City of Biloxi, and that the $1,000.00 legacy bequeathed to her faithful housekeeper, Louise Boykins, should also be paid out of the proceeds of the sale of said real estate. The chancellor found that no cause had been shown which would justify the removal of Roy M. Watson, as executor. A decree was therefore entered construing the will according to the conclusions announced in the chancellor's opinion. Roy M. Watson was confirmed as executor of the estate, but was required to execute a bond in the sum of $20,000.00 conditioned for the faithful performance of his duties as executor. From that decree Roy M. Watson, Executor, and Joan Mortimer Williams and Lucille M. Mortimer Wiegan, devisees, have prosecuted this appeal with supersedeas, and Mrs. Caffery has prosecuted a cross appeal from that part of the decree denying her petition for the removal of Roy M. Watson as executor.

██ █ The first point argued by the appellant's attorneys as grounds for the reversal of the decree of the lower court is that the court erred in its holding that the bequest by the testatrix to her daughter, Daphne Gillis Caffery, of "the entire contents of my home 806 W. Beach and other personal property of which I may die possessed of to do with as she wishes," included the cash and bonds of which the said testatrix died possessed, and in its holding that all expenses of the administration of the estate, including all estate and inheritance taxes, should be paid out of the proceeds of the sale of the real property referred to in the will as "my home, 806 W. Beach, Biloxi."

The appellants' attorneys argue that the words "personal property" as used in the will should be deemed to have been used in their restricted sense as meaning only tangible personal property owned by the deceased, as in cases where the words are intended to mean only per-

sonal effects or personal goods, and chattels, as distinguished from cash in the bank and stocks and bonds.

We think there was no error in the court's construction of the above mentioned provisions of the will.

In Ball v. Phelan, et al, 94 Miss., 293, 49 So. 956 (1908) the court said: "The one fundamental rule governing the construction of all wills is to ascertain what the intent of the testator was. This intent must be gathered, it is true, from the language used in the will, and by this is meant that such intention shall be gathered from the four corners of the instrument; that is to say, from the whole will—the whole frame of the will; the whole scheme of the testator manifested by the will, taking into consideration and giving due weight to every word in the will; and, when once the actual intent of the testator at the time of the making of the will has been in this way ascertained, all minor, subordinate, and technical rules of construction must yield to this paramount intent thus ascertained."

The term "personal property" in its broadest legal signification includes everything the subject of ownership not being land or any interest in land, as goods, chattels, money, notes, bonds, stocks and choses in action generally. The text writer in 73 C. J. S. p 170, says: "The terms 'personal property' or personal 'estate' have, in law, a distinct technical meaning, which relates to the nature of the property itself and distinguishes it from real property. They are terms of wide signification, and in their broad and general sense include everything which is the subject of ownership not coming under the denomination of real estate, and which has an exchangeable, value or goes to make up one's wealth or estate."

We think the will in this case clearly shows that the testatrix knew the meaning of the phrase "personal property" when she left the entire contents of her home and "all other personal property of which I may die

possessed," to her daughter, Mrs. Caffery. The inventory of the goods, chattels and personal estate of the testatrix, which was filed by the executor on May 27, 1957, shows that the testatrix owned no tangible personal property, other than the household furniture and furnishings, which made up "the entire contents of her home" in the City of Biloxi, and one 1956 model Plymouth automobile. There is no proof in the record which indicates that the testatrix owned any other kind of tangible personal property when she wrote the will; and it is not reasonable to assume that when the testatrix used the words, "all other personal property" she meant only a used automobile. The testatrix owned intangible personal property, consisting of bonds and money on deposit in bank, of the total value of several thousand dollars, which was not otherwise disposed of in the will. ██ ██ The law does not presume that a testator intended to die intestate as to a part of his estate; ██ ██ and in view of the above mentioned facts, we think that it cannot be said that the testatrix in this case intended that the words, "all other personal propesty" should be construed to mean only tangible articles of personal property.

When the testatrix bequeathed her personal property to her daughter, Mrs. Caffery, she had already, in a preceding item of the will, devised her property in Louisiana to her son, Marcel A. Gillis, her daughter, Daphne Gillis Caffery, and her great granddaughter, Joan Mortimer; and after bequeathing her personal property to her daughter, Mrs. Caffery, she proceeded immediately to dispose of her other real property, which was by far the most valuable property that she owned, by providing that her home on West Beach Boulevard in the City of Biloxi should be sold, and that the proceeds derived from the sale of the property, after all expenses were paid, should be divided into thirds, one-third to go to her granddaughter, Lucille Minor Mortimer, one-third to

her granddaughter, Joan Minor, one-third to her great granddaughter, Joan Mortimer. The testatrix bequeathed only one legacy, which was payable in money, and that legacy was the $1,000.00 payable to her "faithful house-keeper, Louise Boykins." The will contains no formal residuary clause; and indeed the testatrix seems to have understood that no residuary clause was needed, in view of the fact that she had disposed of all of her property, both real and personal, as set forth above.

■■ As stated by the court in Temple vs. First National Bank of Meridian, 202 Miss. 92, 30 So. 2d, 605, a testator, who wishes to do so, may charge his real property with the entire burden of the payment of his debts and the expenses of administration to the complete exoneration of his personalty, if and when the real estate is sufficient to bear the charge. The testatrix in this case had a right to bequeath her personal property to her daughter "to do with as she wishes," and direct that "all expenses" be paid out of the proceeds of the sale of her residence property in Biloxi. The chancellor was of the opinion that she had done just that in her will; and we think that it cannot be said that the chancellor was wrong.

■■ We think the chancellor was correct in his holding that under the terms and conditions of the will, Daphne Gillis Caffery took all personal property, including cash and bonds, of which the testatrix died possessed, and that all expenses of administration of the estate, including estate and inheritance taxes, and the debts and the legacy to Louise Boykins, are to be paid from the proceeds of the sale of the real property owned by the testatrix in the City of Biloxi, and referred to as "my home 806 W. Beach".

The appellants' attorneys have argued two other points as grounds for reversal of the decree of the lower court; (1) that the court erred in denying the motion of the respondents and cross-complainants for leave to amend their answer and cross-bill so as to conform to the

proof; and (2) that the court erred in excluding certain evidence offered on behalf of the respondents and cross-complainants to show the facts and circumstances surrounding the testatrix as an aid to the interpretation of the language of the will.

██ ██ We think there is no merit in the contention that the court erred in overruling the motion for leave to amend the respondent's answer and cross-bill. The proposed amendment contained nothing more that a restatement of the respondents' theory of the case, which had already been clearly stated in their answer and cross-bill; and the amendment, if allowed, would have had no effect upon the final determination of the issues presented by the pleadings. ██ ██ Neither do we think there was reversible error in the court's action in excluding the evidence offered on behalf of the respondents and cross-complainants relative to the financial circumstances and position of the Cafferys, and other devisees mentioned in the will.

We come now to the consideration of the appellee's cross-appeal.

██ ██ There was no error in the chancellor's refusal to remove Roy M. Watson from his office as executor. The record shows that Watson had been the trusted business agent and advisor of the testatrix for a period of approximately twenty years, and there is no proof in the record to show that he had not been faithful to the trust reposed in him. The fact that the testatrix appointed him as executor of her will indicates very clearly the favorable opinion which she had formed of him both, as to his competency and as to his integrity. The attorneys for the cross-appellant admit that the fact that Watson was a nonresident of the State of Mississippi was not sufficient to disqualify him from serving as executor; ██ ██ and even if it be conceded that a spirit of hostility existed between him and the Cafferys, that in itself was not sufficient to justify his removal from the office of executor.

The fact that he did not render formal accountings to the testatrix from time to time during her lifetime, when no such accounting was demanded by the testatrix, had no bearing on his fitness to serve as executor. ██ ██ The fact that the executor had paid a $2,000.00 demand note, which the testatrix owed to the Hibernia Bank and Trust Company at the time of her death, and which was secured by $2,000.00 of bonds, without requiring the note to be probated and registered as a claim against the estate, did not constitute sufficient cause for his removal. Watson testified that he paid the note to stop the interest and to redeem the assets pledged to secure the debt. The testatrix was of the opinion that Watson was a suitable person to be appointed executor of her will; and we think that no court has ever held that an executor should be removed merely because of the personal dislike of one of the legatees.

We find no reversible error in the record, and the decree of the lower court is therefore affirmed, both on direct appeal and on cross-appeal.

Affirmed on direct appeal and on cross-appeal.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.* concur.