321 So.2d 287 (1975)
In re ESTATE OF Lula S. TORIAN.
Ralph CRUM et al.
v.
FIRST NATIONAL BANK OF MEMPHIS, Executor and Dorothy Hope Sullivan, et al.
No. 48377.
Supreme Court of Mississippi.
November 3, 1975.
*288 Butler, Snow, O'Mara, Stevens & Cannada, Lawrence J. Franck, Jay A. Travis, III, Jackson, for appellants.
Holcomb, Dunbar, Connell, Merkel & Tollison, Clarksdale, for appellees.
Before PATTERSON, INZER and WALKER, JJ.
INZER, Justice:
This is an appeal by Ralph Crum and others, the residuary legatees of the will of Lula S. Torian, from a decree of the Chancery Court of DeSoto County denying the petition of the executor to withdraw the original will and to transfer jurisdiction to the state of the domicile of the deceased, and from an adjudication that the estate tax is to be paid out of the residue of the estate. We affirm.
Mrs. Lula B. Sullivan Torian died on October 24, 1972, leaving a last will and testament executed on February 17, 1970, and two codicils, one dated March 26, 1970, and the other dated January 27, 1971. The will and codicils were executed in DeSoto County. The codicil dated March 26, 1970, appointed the First National Bank of Memphis as executor and directed that the executor use the law firm to which Joel Walker belonged in Hernando, Mississippi, as attorneys for the executor because of his long association with the family.
At the time of her death and at the time the wills and codicils were executed, Mrs. Torian's legal domicile was in West Memphis, Arkansas. After her death, the executor filed a petition to probate the original will in DeSoto County. The petition alleged that the testatrix was a resident of Arkansas, that at the time of her death she owned no real property in Arkansas, and that she owned approximately 900 acres of land in DeSoto County, and that the probate of the will in DeSoto County, Mississippi, where the bulk of her estate was situated was necessary and desirable. On November 3, 1972, an order was entered admitting the will to probate and appointing the First National Bank of Memphis executor without bond. The executor qualified and letters testamentary were issued to it. Notice to creditors was published as required by law.
Clause I of the will as amended by the second codicil dated January 27, 1971, devised to Mrs. Torian's husband and the nine appellants herein all of her stock in Schlering-Plough Corporation to be shared equally. Clause II of the will devised to Ralph Crum, one of the appellants herein, nine or ten acres of land in DeSoto County, known as part of the "Old Cheatum Place." Clause III of the will bequeathed to her husband H.G. Torian $10,000 cash. Clause IV of the will devised $200 to the Methodist Children's Home in Jackson, and $2,000 to the Methodist Hospital in Memphis.
Clause V of the will devised to Dorothy Hope Sullivan, Robert Lamb Sullivan, David Sullivan and Warren Ware Sullivan all the remainder of decedent's land in DeSoto County consisting of 920 acres to be shared equally.
In Clause VII the testatrix provided that all the rest, residue and remainer, including any lapsed legacies in cash that she had left, was devised and bequeathed to the appellants, share and share alike.
On July 26, 1973, the executor filed a petition styled "Petition of Executor for Permission to Withdraw Original Will." The executor alleged that an authenticated copy of the will of Mrs. Torian had been probated in the Probate Court of Crittenden County, Arkansas, and that the bank had been appointed executor by the Arkansas Court. However, the executor alleged that there was some question about the validity of probate of the authentic copy of the will executed by a resident of Arkansas and that no authority appeared to exist to probate a copy of an original will of a resident of Arkansas.
*289 The reasons given in the petition for the request that the original will be transferred to Arkansas was that decedent's will and codicil both stated that she was a resident of Arkansas, that at the time of her death she was married to Mr. Torian who was and still is a resident of Arkansas and that she died in Arkansas. Furthermore, the testatrix and her husband resided on property in West Memphis, Arkansas, to which reference was made in her will. All parties in interest were made parties defendant to the petition and process was issued for them.
The appellants, who are the residuary legatees, answered and joined in the prayer of the executor to be allowed to withdraw the original will so that it could be probated in Arkansas.
The appellees, all residents of Mississippi, to whom the 920 acres of land in DeSoto County was devised, answered the petition and denied that Mrs. Torian owned any land in Crittenden County, Arkansas, that was subject to probate. Appellees further alleged that the value of her personal estate in Arkansas was less than $3,000 and that under the laws of Arkansas no administration of the estate was necessary. The answer alleged that the probate of the original will in DeSoto County was proper and that Section 509, Mississippi Code 1942 Annotated, prohibited the withdrawal of the original will after probate in Mississippi. The answer was made a cross-bill against the executor and alleged that the estate of Mrs. Torian was of such size that payment of federal estate taxes was required; that such taxes had not been paid; and that the non-payment of such taxes unnecessarily encumbered the title to the cross-respondents to the land devised to them. Cross-petitioners prayed that the executor be required to pay the proper estate taxes and to allocate the burden of such taxes as required by the laws of the State of Mississippi.
In answer to the cross-bill, the executor and appellants admitted that the estate would owe federal estate taxes, but alleged that a controversy existed between the beneficiaries of the estate as to the domicile of the decedent and the related question of which state's law should determine the proration of such taxes. The executor contended that since the decedent was a resident of Arkansas, the liability of the parties for the payment of the estate taxes should be determined by the probate court of the county in which the decedent was domiciled at the time of her death.
The pleadings raised two issues: one, whether the executor should be allowed to withdraw the original will in order that it would be probated in Arkansas; and two, if not so allowed to withdraw the original will, whether the Mississippi law or Arkansas law should be applied as to the payment of federal estate taxes.
The testimony reveals that Mrs. Torian, prior to her marriage to Mr. Torian in 1960, had lived in DeSoto County for many years. She was a good business woman and was successful in operating her farming interests. She did her banking with the First National Bank in Memphis. At the time she married Mr. Torian she was 79 years of age. It was her first marriage and Mr. Torian was a widower who had retired. He evidently was a man of modest means and maintained a small residence in West Memphis, Arkansas.
After her marriage she lived with her husband in West Memphis, but continued to maintain her large home in DeSoto County and kept it staffed with two servants. Electrical and telephone service continued in the home, and some clothing and food were kept there. She also kept some of her jewelry in a safe. Until the last year before her death, Mrs. Torian came to Mississippi every week or two and would stay a day or two at a time and on occasions stayed much longer. She continued to supervise her farming interests, to keep her membership in the Methodist Church at Walls, Mississippi and to vote in Mississippi, she last voted in the two primaries *290 and the general election in 1971. After her marriage, Mrs. Torian continued to refer to DeSoto County as her home.
At the time of her death, the only real property Mrs. Torian owned in Arkansas was an interest in the home in which she and Mr. Torian resided. The title to the property was in both parties as an estate in entirety and it passed to Mr. Torian by operation of law. She owned no personal property located in Arkansas except some personal effects and household furnishings valued less than $3,000.
Her bank accounts were all with Memphis banks and her stocks and bonds were in a lock box in the First National Bank of Memphis. After her death and after the will was probated in Mississippi, the executor took charge of these assets amounting to approximately $486,000.
The chancellor found that in view of the express provisions of Section 91-7-33, Mississippi Code 1972 Annotated, the original will was properly probated in DeSoto County, Mississippi, and that by virtue of Section 91-7-31, the original will could not be withdrawn from the clerk's office.
The chancellor further found that by virtue of her being married and living with her husband whose domicile was in Arkansas, the testatrix was legally domiciled in Arkansas at the time of her death, but in her own mind, her home and only home was in Mississippi. In the chancellor's opinion he stated that he found from the evidence that Mrs. Torian intended for her estate to be wound up in accordance with Mississippi law. As we construe his opinion, we determine that for that and other reasons, the chancellor found that the contacts of the forum state were of greater significance than those of the domiciliary state.
A decree was entered dismissing the petition to transfer jurisdiction to the probate court in Arkansas and directing that the estate taxes and all other liabilities of the estate, including administration expenses, be paid from the residuary estate.
On appeal, appellants argue two points for reversal of this case. Point I is as follows: Although the Mississippi court had jurisdiction to admit the will of the non-resident testatrix to probate, nevertheless, since the executor probated the will in this state by mistake and thereafter sought to withdraw the will to present it for probate in Arkansas, the domiciliary state, the Mississippi court as a matter of comity should have declined jurisdiction or deferred to the courts of the domiciliary state on the issue of which parties should bear the burden of estate taxes. Point II is as follows: Having assumed jurisdiction the Mississippi court should have applied the law of Arkansas to determine which parties should bear the burden of estate taxes, absent a clearly expressed intent to the contrary. The law of the state of the domicile governs that determination. Arkansas law compelled the apportionment of such taxes.
We find no merit in either of these arguments. As to Point I it is clear from the record that the will was not probated in Mississippi by mistake. In fact, the petition to withdraw the original will and transfer jurisdiction to Arkansas does not allege that the will was probated in Mississippi by mistake. Neither is there any proof that the will was probated in Mississippi through mistake. The only testimony even tending to show a mistake was the testimony of Mr. Blumenthal, the present trust officer of the bank, who drew a conclusion on behalf of the bank that it was a mistake to offer the will for original probate in Mississippi when the testatrix was domiciled in Arkansas at the time of her death. However, Mr. Blumenthal was careful to point out that he was not the trust officer at the time the will was probated in Mississippi and that he had no idea as to what prompted the bank to offer *291 the will for probate in Mississippi instead of Arkansas. He then said:
All I can say is that we found ourselves in this present situation. We found an ambiguity of tax law and in attempting to clarify what we should do we sought the best way to bring it to the Court's attention. I don't believe that we have made any intentional mistakes or any mistakes otherwise.
The chancellor correctly held by virtue of the provisions of Section 91-7-33 the original will was properly probated in Mississippi in the first instance. The chancellor also correctly held that since the original will was probated in this state Section 91-7-31, prohibited withdrawal of the original will.
Having assumed jurisdiction, the Mississippi court was not required by comity to defer to the courts of the domiciliary state on the issue of which of the parties should bear the burden of the estate taxes. To have done so would have been contrary to the public policy of this state announced by our statutes and decisions of this Court.
The forerunner of Section 91-7-33, supra, was construed in Carroll v. McPike, 53 Miss. 569 (Br. & Hem. 1876):
The general doctrine, as declared by Story, in Conflict of Laws, § 518, is that an administration in any other country than that of the domicile of the deceased is treated as in its nature ancillary merely to that in the country of the domicile, because "the final distribution of his effects among his heirs or distributees is to be decided by the law of his domicile." This reason wholly fails in its application to this State, and the doctrine built on it is entirely subverted by our statute, declaring that personal property situated in this State shall descend and be distributed according to the laws of this State, notwithstanding the domicile of deceased may have been in another State. Code, § 1950. In this State administration of the effects here of a deceased person, no matter where his domicile was, is independent of all other administrations, and to be conducted in all respects as if the decedent had been a citizen of this State, when he died. Debts are to be paid according to the assets and any surplus is to be distributed here. All creditors, no matter where residing, nor where the debts were contracted, are entitled to prove their claims here, and proceed in our courts to enforce them, and to share in the assets here.
(53 Miss. at 576, 577).
Bolton v. Barnett, 131 Miss. 802, 95 So. 721 (1923), involved the will of Mrs. Bolton who resided with her husband in Memphis, Tennessee, at the time of her death. She had lived until a few years before her death in Prentiss County, Mississippi. She owned a home and some small amount of personal property in Mississippi, and after her death, her original will was probated in the Chancery Court of Prentiss County, where the property was situated. The question was raised as to whether the Chancery Court of Prentiss County had jurisdiction, and this Court pointed out that under the provisions of Section 2004, Code of 1906, now Section 91-7-33, Mississippi Code 1972 Annotated, the original will could be proven and admitted to probate in the first instance in Mississippi, and that the Chancery Court of Prentiss County had jurisdiction to admit the will to probate and to construe it. A question was also raised as to the right of the husband of the testatrix to renounce the will, since under the law of Tennessee, the domicile of the deceased, the husband had no right to renounce the will. In answer to this contention, this Court stated:
Because of our present laws, in some ways peculiar, with reference to personal property, and especially so because of the special permission to originally probate a foreign will here, these probates and administrations are now original, *292 and in no way ancillary to the probate at the domicile of the testator.
Since the original will may be probated here, it follows as a matter of right and justice that it may be renounced here in accordance with our statute upon renunciation. The Garland Case, supra, says the right of renunciation is available only in the proper tribunal of the testatrix's domicile because it is an incident to the jurisdiction of the tribunal which has exclusive power to admit the will to probate, and proceeds from the jurisdiction over the matter to probate. Under our present law our court has the jurisdiction to admit the will to probate in the first instance, and therefore the right of renunciation pertains to this tribunal. We neither look to the state of the domicile of the testator for the power to renounce nor to the share to be taken upon the renouncing of the will either of the real estate or the personal estate situated here, but look to our own laws for both because of the original probate of the will here. Under our law the husband has the right to renounce the will. This statute does not give the right of renunciation to only citizens of this state, but gives it to any husband or wife upon the probate of the will of the deceased. (Emphasis added). (131 Miss. at 826, 827, 95 So. at 726.)
As to the payment of debts and expenses of administration of the estate the pertinent part of Section 91-7-91, provides:
The goods, chattels, personal estate, choses in action, and money of the deceased, or which may have accrued to his estate after his death from the sale of property, real, personal or otherwise, and the rent of lands accruing during the year of his death, whether he died testate or intestate, shall be assets and shall stand chargeable with all the just debts, funeral expenses of the deceased, and the expenses of settling the estate. The lands of the testator or intestate shall also stand chargeable for the debts and such expenses over and above what the personal estate may be sufficient to pay, and may be subjected thereto in the manner hereinafter directed.
It is clear from this statute and the decisions of this Court that in the absence of a contrary provision in a will, resort must first be had to the personal property in the payment of debts and expenses of the estate including federal estate taxes, before resort may be had to real property. It is also clear that resort must be first had to personal property not specifically devised by the will. Temple v. First National Bank of Meridian, 202 Miss. 92, 30 So.2d 605 (1947); Gaines v. Klien, 203 Miss. 271, 34 So.2d 489 (1949), and Riegelhaupt v. Ostroffsky, 237 Miss. 521, 115 So.2d 331 (1959).
Appellants cite numerous cases from other jurisdictions which hold that the apportionment of federal estate taxes when a decedent owns property in several states should be determined by the law of the decedent's domicile. Appellants rely heavily on Mazza v. Mazza, 154 U.S.App.D.C. 274, 475 F.2d 385 (1973), in support of their argument that the law of the decedent's domicile should control. In Mazza, the decedent was domiciled in Maryland and his will was probated in Maryland. Maryland also had a statute providing for apportionment of federal estate taxes. After his widow paid the estate taxes she sued in the District of Columbia seeking contribution from decedent's sister, who inherited by operation of law some of the property located in the District. Although the District of Columbia did not have an apportionment statute, the federal court declared that the law of Maryland should apply in such a case. However, that court did not arbitrarily apply the rule of decedent's domicile, but held that Maryland's law should apply under the "interest analysis approach." Maryland clearly had a greater *293 interest in the controversy, and the court stated:
The relevant inquiry focuses on the relationships of the two jurisdictions to the controversy, the interests involved, and whether application of foreign law would offend a strong and clearly defined local policy. (475 F.2d at 391).
In the case before us, the forum state, Mississippi, and not the domiciliary state, Arkansas, had the greater substantial interest in this controversy. The application of the Arkansas statute would not serve the State of Arkansas or any citizen thereof. The property in Arkansas went to decedent's husband and is unaffected by the Arkansas apportionment statute which provides that no such taxes shall be apportioned against the surviving spouse with respect to property received by such spouse, the value of which is deductible for federal estate tax purposes. Thus, the only interest that the State of Arkansas has in this litigation is the fact that the domicile of the decedent was in Arkansas at the time of her death. On the other hand, the situs of the real property involved is in Mississippi, and the specific devisees to be affected are residents of Mississippi. The residuary legatees are residents of Tennessee. The personal property which decedent left was all located in the State of Tennessee at the time of her death and is now in the hands of the executor and subject to the Chancery Court of DeSoto County, Mississippi. We held in Mitchell v. Craft, 211 So.2d 509 (Miss. 1968), that a case is to be governed by the law of the forum unless it is expressly shown that a different law applies, and that in case of doubt, we will naturally prefer the laws of our own state. Here, Mississippi has the dominant interest and applying the "interest analysis approach," the court correctly held that the Mississippi law would apply. Furthermore, to apply the Arkansas apportionment statute, would be repugnant to the public policy of this state.
We hold that the chancellor was correct in holding that the estate taxes should be paid according to Mississippi law. The executor was under no compulsion to probate the will in Mississippi and having submitted itself to the jurisdiction of the Chancery Court of DeSoto County and collecting the assets pursuant to Letters Testamentary granted in DeSoto County, Mississippi, the estate taxes and other debts of the estate must be paid in accordance with the Mississippi law.
For the reasons stated, the decree of the Chancery Court of DeSoto County must be and is affirmed.
Affirmed.
GILLESPIE, C.J., RODGERS, P.J., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.